**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| APEX FINANCIAL OPTIONS, LLC AND GOPHER FINANCIAL, LLC,<br><br><br>Plaintiffs,<br><br>v.<br><br>RYAN GILBERTSON, RRG FAMILY CAPITAL LLC, RYAN GILBERTSON FAMILY 2012 IRREVOCABLE TRUST, AND TOTAL DEPTH FOUNDATION, INC.,<br><br>Defendants. | Case No._ _ _ |

**COMPLAINT**

Plaintiffs APEX Financial Options, LLC ("APEX") and Gopher Financial, LLC ("Gopher") (collectively "Plaintiffs" or "Purchasers"), for their Complaint against Ryan Gilbertson ("Gilbertson"), RRG Family Capital LLC ("RRG"), Ryan Gilbertson Family 2012 Irrevocable Trust ("Gilbertson Family Trust"), and Total Depth Foundation, Inc. ("Total Depth") (collectively "Defendants" or "Seller"), state and allege as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.      Plaintiffs bring this action for securities fraud, common law fraud, breach of contract, and declaratory judgment, and interpleader against Defendants, who perpetrated fraud against Plaintiffs and breached an agreement for Plaintiff's purchase of certain equity interests from Defendants through extensive and material misrepresentations designed to inflate the purchase price.  Through this action, Plaintiffs seek damages, as well as a declaratory judgment that Plaintiffs are not required to release certain purchase price funds currently held in escrow to Defendants.  As set forth herein, Plaintiffs are justifiably concerned that Defendants seek for

1

Plaintiffs to release such funds to avoid satisfying financial penalties imposed against the individual who controls Defendants pursuant to a 2018 conviction of fraud under federal law.

2.      Defendant Ryan Gilbertson and Peter Hajas, who is the sole member of Plaintiff APEX and Plaintiff Gopher, were each one of several investors in Northern Capital Partners I, LP, a Delaware limited partnership with investments in energy and industrial sands.

3.      In June 2018, Ryan Gilbertson was convicted by a jury in the United States District Court for the District of Minnesota (Hon. Patrick J. Schiltz presiding) of fourteen counts of wire fraud, six counts of securities fraud, and one count of conspiracy to commit securities fraud in connection with an extensive multi-million dollar fraudulent stock manipulation scheme that Gilbertson orchestrated. Anticipating he would receive a sentence including fines and restitution, Gilbertson became interested in raising funds to address his potential sentence liability.

4.      In or about July 2018, Defendant Gilbertson approached Peter Hajas to inquire whether Hajas—or one of the several investment entities Hajas controls—would be interested in acquiring Gilbertson's, RRG's, Gilbertson Family Trust's, and Total Depth's shares of several enterprises, including Northern Capital Partners I, LP; Northern Capital Partners I, GP, LLC; Northern Capital Group LLC; NI Sand Holding, LLC; and NIS Investment Holding, LLC (collectively the "Purchased Equity").

5.       Purchased Equity controls Northern Industrial Sands, LLC, a company that mines, processes, and delivers Northern White frac sand from Western Wisconsin.

6.      Defendants employed a series of material misrepresentations to entice Plaintiffs into purchasing Purchased Equity for a grossly inflated price. In particular, Defendants misrepresented the nature and collectability of accounts receivable, failed to disclose that they

had off-the-record agreed to accord and satisfaction on several outstanding accounts well below the booked value, and failed to disclose numerous long-term contracts Purchased Equity was subject to, which created substantial financial liability and legal risk.

7.      In reliance upon Defendants misrepresentations about the nature and collectability of accounts receivable, existing long-term contractual obligations, and the value of the Purchased Equity, Plaintiffs entered into a sale agreement with Defendants on October 17, 2018. A true and correct copy of the sale agreement (hereinafter the "Equity Purchase Agreement") is attached hereto as Exhibit 1 and its terms and conditions are fully incorporated herein by reference.

8.      To ensure that the sale of the Purchased Equity was not a means for Gilbertson to evade paying the financial Penalties that Judge Schiltz would impose on  Gilbertson at sentencing, and to avoid having the United States hold Plaintiffs responsible for inadvertently and unknowingly aiding such scheme, Plaintiffs required as a material condition of any negotiations and ensuing agreement that there be full transparency and disclosure of the anticipated transaction to the United States Attorney's Office for the District of Minnesota.

9.      Plaintiffs further demanded that any agreement would need to contain an escrow provision in which the purchase price for the Purchased Equity would be placed into escrow until after Gilbertson's sentencing, after which that the purchase price would be released either to the United States in satisfaction of Seller's financial Penalties to the United States "related to Seller's convictions for wire fraud, conspiracy to commit securities fraud, and securities fraud in United States of America v. Ryan Randall Gilbertson. No. 17-CR-0066 (PJS/HB)" or to Gilbertson, RRG, Gilbertson Family Trust, and Total Depth "in accordance with their respective pro rata portions of the Purchase Price, within ten (10) business days if and only if Seller (or its

Affiliates) have satisfied the Penalties and have provided Purchaser documentary proof reasonably satisfactory to Purchaser of satisfaction the Penalties."

10.     When the deal closed on October 17th, Plaintiffs put the purchase funds into (the "Escrow Fund") into an escrow account (the "Escrow Account"). Almost immediately thereafter, Plaintiffs began discovering that Defendants failed to disclose a number of liabilities and made a number of material misrepresentations concerning the Purchased Equity during negotiation of the Equity Purchase Agreement.

11.     On December 11, 2018, at Gilbertson's sentencing, after concluding that Gilbertson had used sophisticated means to perpetrate an extensive fraud and had willfully lied under oath to obstruct justice, Judge Schiltz sentenced him to 144 months imprisonment and ordered him to pay a fine of $2 million, a special assessment of $2,100, and restitution of $15 million.

12.     On December 21, 2018, counsel for Defendants wrote to APEX requesting release of $2 million from the Escrow Fund to be paid to the U.S. District Court for the District of Minnesota to be paid from Gilbertson's share of the sales proceeds. APEX released the funds as requested.

13.     On December 26, 2018, counsel for Defendants wrote to APEX a second time requesting release of an additional $101,900 from Gilbertson's share of the Equity Purchase Agreement to be paid to the U.S. District Court for the District of Minnesota. Again, APEX released the funds as requested.

14.     On December 27, 2018, counsel for Defendants wrote to APEX a third time requesting distribution of pro rata shares of sales proceeds to RRG, Gilbertson Family Trust, and Total Depth.

15.     When Plaintiffs expressed concern that they could not release pro rata shares, absent satisfactory documentary proof that all financial Penalties had been satisfied as required by the Equity Purchase Agreement, Defendants provided four documents. None of these, however, demonstrated that the financial Penalties had been satisfied. Instead, they purported to show that Gilbertson had no beneficial ownership interest in either Total Depth or the Gilbertson Family Trust and only a certain percentage interest in RRG. But publically available reports suggest that Gilbertson still exercises control over the entities. Having not yet received reasonably satisfactory assurance that all financial Penalties have been satisfied, Plaintiffs have not released any further funds from the Escrow Funds.

16.     Plaintiffs have reasonable apprehension that Defendants are attempting to force Plaintiffs to release Escrow Funds hastily, without appropriate assurances, in defiance of the terms of the Equity Purchase Agreement, and to the detriment of Plaintiffs.

17.     Plaintiffs reasonably believe that Defendants, in seeking to force them to release the funds prematurely, may be attempting to use Plaintiffs to fraudulently convey funds to evade paying the financial Penalties to the United States as ordered by Judge Schiltz. Plaintiffs are compelled to bring this suit not only because they were defrauded and suffered damages as a result of the fraud, but also to determine whether Plaintiffs should release the funds in the Escrow Funds to the United States or to RRG, Gilbertson Family Trust, or Total Depth according to their pro rata shares.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this dispute pursuant to Section 27 of the Securities Exchange Act of 1934 15 U.S.C. § 78aa; 28 U.S.C. § 1335, because Plaintiffs face competing claims on a fund in excess of $500 from Defendants of diverse states; 28 U.S.C. § 2202; and 28 U.S.C. § 1331 because this action arises under the laws of the United States. This

Court has supplemental subject matter jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

19.     This Court has personal jurisdiction over Defendant RRG because it is a citizen of Delaware. The Court has personal jurisdiction over all other defendants and plaintiffs because of their close involvement in the sale of Purchased Equities, which are entities existing in and organized under the laws of the State of Delaware. Further, all Plaintiffs and Defendants signed an Equity Purchase Agreement which contained a governing law and forum selection clause identifying the state and federal courts of Delaware as the exclusive locus of any litigation related to the Equity Purchase Agreement.

20.     Venue is appropriate in this Court to pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) because all of the parties consented to a forum selection clause contained in the controlling documents, Defendant RRG and the Purchased Equity reside in this jurisdiction, all of the parties have transacted business in this jurisdiction, and all are subject to this Court's personal jurisdiction.

## PARTIES

21.     Plaintiff APEX is a limited liability company organized and existing pursuant to the laws of the State of Minnesota with its principle address at 16526 West 78th Street, Suite 333, Eden Prairie, MN 55346. Plaintiff APEX is controlled by its sole member Peter Hajas. Mr. Hajas was a shareholder in Northern Capital Partners I, LP.

22.     Plaintiff Gopher is a limited liability company organized and existing pursuant to the laws of the State of Minnesota with its principle address at 16526 West 78th Street, Suite 333, Eden Prairie, MN 55346. Peter Hajas is the sole member and manager of Gopher.

23.     Defendant Gilbertson is an individual and citizen of the state of Minnesota, with a principal residence located at 1675 Neal Avenue, Delano, Minnesota 55328. At all times relevant

to this dispute Gilbertson was President of NI Sand Holding LLC, Manager of Northern Capital Partners I, LP, and Manager of NIS Investment Holding LLC. Gilbertson held 7.58% of the limited partnership interests of Northern Capital Partners I, LP, some "NGC Equity" (100 percent of the issued and outstanding equity of Northern Capital Group LLC), and 31.25 Class B Units of NI Sand Holding, LLC.

24.    Defendant RRG is a limited liability company organized and existing pursuant to the laws of the State of Delaware with its principal place of business at 11375 NW 21st Street, Ocala, Florida 34482. The company consists of three members Ryan Gilbertson, Weldon Gilbertson (for himself), and Weldon Gilbertson (as custodian for Ryan's son Holden Gilbertson). RRG held 16.82% of the limited partnership interests of Northern Capital Partners I, LP.

25.    Defendant Gilbertson Family Trust is a Florida Trust established by Gilbertson naming his living child (and any subsequent children) as beneficiaries. The initial funding of the trust includes highly concentrated stock positions in Northern Oil and Gas, Inc., Great Plains Sand, LLC, and obligations due to. Gilbertson from Dakota Plains Holdings. Defendant Gilbertson Family Trust owned a small portion of the NCG Equity and 31.25 Class B Units of NI Sand Holding, LLC.

26.    Defendant Total Depth is a nonprofit corporation organized and existing pursuant to the laws of the State of Minnesota. Total Depth's incorporation paperwork lists its principle place of business as at 315 Manitoba Avenue #200, Wayzata, MN 55391, and its President as Weldon Gilbertson, whose address is also listed as 315 Manitoba Avenue #200, Wayzata, MN 55391. Yet, Total Depth's most recent report to the Office of the Minnesota Attorney General lists Defendant Ryan Gilbertson as the "Contact Person" for the Trust and provides Defendant

Ryan Gilbertson's residential address (1675 Neal Avenue, Delano, MN 55328) as the general address for the organization. For each of the four years Total Depth has filed reports with the Attorney General they have spent $0 on "Program or Charitable Purposes." In each of the four reports, Total Depth reports between $8,800 and $16,400 in "Management/General Expense[s]", $0 in "fundraising expense[s]," and between $110,203 and $315,203 in "Total Expenses" (the vast majority of which are uncategorized and not charitable). Defendant Total Depth owned and 31.25 Class B Units of NI Sand Holding, LLC.

## FACTUAL BACKGROUND

27.     Gilbertson was one of several investors in Northern Capital Partners I, LP, a Delaware limited partnership with investments in energy and industrial sands.

28.     Hajas was also an investor in Northern Capital Partners I, LP.

29.     In June 2018, Gilbertson was convicted by a jury of fourteen counts of wire fraud, six counts of securities fraud, and one count of conspiracy to commit securities fraud. United States of America v. Ryan Randall Gilbertson. No. 17-CR-0066 (PJS/HB). Anticipating he would receive a sentence including fines and restitution, Gilbertson became interested in raising funds to address his potential sentence liability.

30.     In or about July 2018, Gilbertson approached Hajas to inquire whether Hajas—or one of the investment entities he controls—would be interested in acquiring Gilbertson's, RRG's, Gilbertson Family Trust's, and Total Depth's shares of several enterprises, including Northern Capital Partners I, LP; Northern Capital Partners I, GP, LLC; Northern Capital Group LLC; NI Sand Holding, LLC; and NIS Investment Holding, LLC.

### A.     The Equity Purchase Agreement

31.     Beginning in or about July 2018, Plaintiffs entered into negotiations with Defendants to acquire "Purchased Equity," which the Equity Purchase Agreement defined to

include (a) 24.39% ($8,050,000 of the original committed capital of $33,000,000) of the limited

partnership interests of Northern Capital Partners I, LP, a Delaware limited partnership; (b)

65.22% (75 units of the 115 units issued and outstanding) of the issued and outstanding equity of

Northern Capital Partners I, GP, LLC, a Delaware limited liability company; (c) one hundred

percent of the issued and outstanding equity of Northern Capital Group, LLC, a Delaware limited

liability company; and (d) 100 Class B Units of NI Sand Holding, LLC, a Delaware limited

liability company.

32.     The Equity Purchase Agreement indicated Purchased Equity would be sold by

"Seller," a term which the Equity Purchase Agreement defined as the collective of Seller 1

(Defendant Gilbertson), Seller 2 (Defendant RRG), Seller 3 (Defendant Gilbertson Family

Trust), and Seller 4 (Defendant Total Depth).

33.     As a result of those negotiations, on October 17, 2018, Defendants ("Seller") and

Plaintiffs ("Purchaser") executed the Equity Purchase Agreement.

34.     Pursuant to the Equity Purchase Agreement, Plaintiffs paid the Escrow Funds,

which totaled $11,115,247.72, into the Escrow Account in exchange for Purchased Equity.

35.     In order to make sure the sale of Purchased Equity was not a means to evade

Gilbertson's financial liabilities to the United States, Plaintiffs required as a material condition of

the agreement that there be full transparency and disclosure of the anticipated transaction to the

United States Attorney's Office for the District of Minnesota. Plaintiffs further demanded the

Equity Purchase Agreement contain an escrow provision in which the purchase price for the

Purchased Equity would be placed into escrow until after Gilbertson's sentencing.

36.     The Equity Purchase Agreement called for Plaintiffs to release the funds in the

Escrow Account as follows: (a) "to the applicable Governmental Entity to satisfy Seller's (or its

Affiliates') financial penalties related to Seller's convictions for wire fraud, conspiracy to

commit securities fraud and securities fraud in United States of America v. Ryan Randall

Gilbertson, No. 17-CR-0066," or (b) "to "Seller 1, Seller 2, Seller 3 and Seller 4 in accordance

with their respective pro rata portions . . . if and only if Seller (or its Affiliates) have satisfied the

Penalties and has provided Purchaser documentary proof, reasonably satisfactory to Purchaser,

of satisfactions of the Penalties."

37.     Pursuant to the Equity Purchase Agreement, Plaintiffs would not release escrow

funds to Seller in pro rata portions, absent reasonably satisfactory documentary proof that the

financial Penalties were satisfied.

38.     Plaintiffs and Defendants closed on the deal memorialized in the Equity Purchase

Agreement on October 17, 2018. On that date, Plaintiffs put the purchase price funds into an

Escrow Account.

39.     Almost immediately thereafter, Plaintiffs began discovering that Defendants had

failed to disclose several liabilities and made numerous material misrepresentations about the

assets acquired via the Equity Purchase Agreement. Plaintiffs realized that Defendant's rampant

lies and omissions had induced Plaintiffs to pay a price far in excess of the value, absent

Defendants' misrepresentations.

**B.      Representations**

40.     Defendants made significant representations regarding the Purchased Equities in

order to enter the Equity Purchase Agreement. Relevant to this dispute, Defendants represented

as follows: [1]

- § 2.7(a) Each Company Entity's financial statements, as heretofore furnished to
  Purchaser (the "Financial Statements"), fairly reflect, in all material respects, such
  Company Entity's financial performance as the dates and during the periods

---

[1] Capitalized terms not otherwise defined in this paragraph have the meaning ascribed to them in the Equity Purchase Agreement.

presented. As of the date on which the Financial Statements of each Company Entity were last provided to Purchaser, no Company Entity had any material obligation, contingent liability, liability for taxes or long-term lease obligation which is not reflected in such Financial Statements, or in the notes thereto.

- § 2.8 Absence of Certain Changes, Events and Conditions. Since December 31, 2017, and other than in the ordinary course of business, there has not been, with respect to Seller, any Company Entity or their respective businesses, any state of facts, event, circumstance, development, change or effect that, individually or in the aggregate: (a) would materially delay, prevent, materially limit or materially impair Seller and the Company Entities from being able to perform their obligations under and in accordance with the terms of the Transaction Documents, or to consummate the transactions contemplated by the Transaction Documents, or (b) has had or would reasonably be expected to have a material adverse effect on the Company Entities' respective business, condition (financial or otherwise), results of operations, assets or liabilities.

- § 2.9 Absence of Undisclosed Liabilities. The Company Entities have no liabilities or obligations, whether accrued, absolute, contingent, unliquidated or otherwise, whether due or to become due, whether known or unknown, and regardless of when asserted, arising out of transactions or events heretofore entered into, or any action or inaction, or any state of facts existing, with respect to or based upon transactions or events heretofore occurring, except for liabilities accrued for on the Financial Statements and (b) liabilities arising in the ordinary course of business since the date of the Financial Statements that are neither material in amount or effect.

- § 2.15 Contracts. Schedule 2.15 lists each material contract to which any Company Entity is a party or by which any of their respective assets are bound, including the Leases (each contract so listed or required to be so listed being a "Major Contract"). Seller has delivered to Purchaser a true, correct and complete copy of each Major Contract. With respect to each Major Contract (a) such terms against the Company Entities and, to the Knowledge of Seller, against each other party thereto and such Major Contract will continue to be so legal, valid, binding, in full force and effect and enforceable on identical terms upon the consummation of the transactions contemplated herein, (b) the Company Entities are not in breach of or default under and, to the Knowledge of Seller, no other party thereto is in material breach of or default under such Major Contract, and (c) no party to such Major Contract has terminated or modified such Major Contract or any material right or liability thereunder or communicated such party's intent to do so.

- § 2.19 Full Disclosure. No representation or warranty by Seller in this Agreement or any certificate or other document furnished or to be furnished to Purchaser pursuant to this Agreement contains any untrue statement of a material fact, or omits to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they are made, not misleading.

Plaintiffs later discovered that each of the foregoing constituted a material misrepresentation by Defendants.

41.     Defendants employed a series of material misrepresentations to entice Plaintiffs to purchasing Purchased Equity for a grossly inflated price. At the time Defendants made the foregoing representations Defendants had actual knowledge that the representations were false. Defendants made the false representations with the intent that Plaintiffs rely on the false representations and to induce Plaintiffs to enter into the Equity Purchase Agreement.

42.     In particular, Defendants misrepresented the nature and collectability of accounts receivable, failed to disclose that they had unofficially agreed to accord and satisfaction on several outstanding accounts well below the booked value, and failed to disclose numerous long-term contracts Purchased Equity was subject to, which created substantial financial liability and legal risk. In reliance upon Defendants misrepresentations about the value of the Purchased Equity, Plaintiffs entered into a sale agreement on October 17, 2018.

43.     Specifically, regarding Section 2.7(a), Defendants represented that their financial statements "fairly reflect, in all material respects, such Company Entity's financial performance" and that "no Company Entity had any material obligation, contingent liability, liability for taxes or long-term lease obligation which is not reflected in such Financial Statements, or in the notes thereto."

44.     Moreover in Section 2.8, Defendants represented that in 2018 there had not been "any state of facts, event, circumstance, development, change or effect that, individually or in the aggregate . . . has had or would reasonably be expected to have a material adverse effect on the Company Entities' respective business, condition (financial or otherwise), results of operations, assets or liabilities."

45.     Defendants knowingly and intentionally deceived Plaintiffs by misrepresenting in Sections 2.7 and 2.8 the nature and collectability of accounts receivable and failing to disclose the existence of off-book accord and satisfaction arrangements with several debtors to the Purchased Equity entities. In particular, Defendants failed to note that customer Eco-stim's greater than $700,000 account receivable was wholly uncollectable, even after Defendants had filed a lien on October 5, 2018; customer Jim Berry's greater than $900,000 account receivable was similarly uncollectable. Defendants also omitted routine financial obligations from Purchased Equity's books like employee bonuses and salary increases. Each of these lies and omissions materially and adversely affected the financial statements, overstated the future earnings prospects of Purchased Equity, and ultimately overstated the value of the Purchased Equity.

46.     Regarding Section 2.9, Defendants represented that there were "no liabilities or obligations . . . or any state of facts existing, with respect to or based upon transactions or events heretofore occurring, except for liabilities accrued for on the Financial Statements and (b) liabilities arising in the ordinary course of business since the date of the Financial Statements that are either material in amount or effect."

47.     Defendants further represented in Section 2.15, Defendants represented they had listed "each material contract to which any Company Entity is a party or by which any of their respective assets are bound."

48.     Yet, Defendants' actual knowledge of the misrepresentations and intent to deceive at Sections 2.9 and 2.15 is demonstrated by the fact that Defendants knowingly and willfully mislead Plaintiffs about a $1.3 million claim against Oil & Gas Transfer LLC, which they claimed was in escrow and would be remitted to the Purchased Equity in short order. Further,

Defendants intentionally and knowingly concealed a series of large, consequential contracts including contracts with Marathon Oil, Halliburton, and Schluberge—each of which exposes Purchased Equity to substantial undisclosed liability. Defendants also failed to disclose to Plaintiffs that they entered into a costly, long-term contract with Chetek Express, a trucking company owned by Defendant Gilbertson's cousin. The Chetek Express contract exposes Purchased Equity to volume and purchase prices well beyond what makes business sense for the enterprise. Each of these material misrepresentation adversely affected the financial statements, overstated the future earnings prospects of the Purchased Equity, and ultimately overstated the value of the Purchased Equity.

49.     Regarding Section 2.19, Defendants claimed that "[n]o representation or warranty by Seller in this Agreement or any certificate or other document furnished or to be furnished to Purchaser pursuant to this Agreement contains any untrue statement of a material fact, or omits to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they are made, not misleading." Yet Defendants made numerous material false statements to induce Plaintiffs into participating in the Equity Purchase Agreement, including misleading statements about the nature and collectability of accounts receivable and omissions of long-term contracts.

50.     All of these lies and omissions, independently and jointly, adversely affected the candor of the diligence documents, overstated future earnings prospects, and grossly overstated the value of Purchased Equity.

**C.     Post-Closing Conduct**

51.     Plaintiffs continue to discover new undisclosed liabilities each day that passes.

52.     On December 11, 2018, Plaintiffs were present at the sentencing of Defendant Gilbertson. After concluding that Defendant Gilbertson had used sophisticated means to

perpetrate a fraud and had willfully lied under oath to obstruct justice, Judge Schiltz sentenced him to 144 months imprisonment and ordered him to pay a fine of $2 million, a special assessment of $2,100, and restitution of $15 million (United States of America v. Ryan Randall Gilbertson. No. 17-CR-0066 (PJS/HB) (Dkt. 303)).

53.     Based on these events, Plaintiffs assumed they would be called upon to release the Escrow Funds to the United States in payment of Defendant Gilbertson's fines or restitution.

54.     Under the terms of the Equity Purchase Agreement, following sentencing, the Escrow Fund would be released (a) "to the applicable Governmental Entity to satisfy Seller's (or its Affiliates') financial penalties" or (b) to "Seller 1, Seller 2, Seller 3 and Seller 4 . . . if and only if Seller (or its Affiliates) have satisfied the Penalties and has provided Purchaser documentary proof, reasonably satisfactory to Purchaser, of satisfactions of the Penalties."

55.     On December 21, 2018, counsel for Defendants wrote to APEX requesting Plaintiffs release of $2 million from the Escrow Fund to be paid to the U.S. District Court for the District of Minnesota to be paid from Mr. Gilbertson's share of the sales proceeds. Plaintiffs released the funds as requested.

56.     That same day, counsel for Defendants also inquired about when Plaintiffs would release the remaining Escrow Funds in pro rata shares. Plaintiffs responded that they would do so per terms of the Equity Purchase Agreement once they had received "documentary proof, reasonably satisfactory to Purchaser, of satisfactions of the Penalties," but they could not do so without adequate assurances.

57.     On December 26, 2018, counsel for Defendants wrote to APEX a second time requesting release of an additional $101,900 from Defendant Gilbertson's share of the Equity

Purchase Agreement to be paid to the U.S. District Court for the District of Minnesota. Again, Plaintiffs authorized the release of the requested Escrow Funds to the U.S. District Court.

58.     The following day, December 27, 2018, counsel for Defendants wrote to APEX a third time requesting distribution of pro rata shares of sales proceeds to Defendant RRG Family Capital LLC, Defendant Ryan Gilbertson 2012 Family Irrevocable Trust, and Total Depth Foundation. In the request, counsel reported that Defendant Gilbertson had no beneficial ownership interest in either Total Depth or the Ryan Gilbertson 2012 Family Irrevocable Trust, but did have a 30.36% share in RRG.

59.     These representations relied upon four documents concerning the ownership interests of RRG Family Capital LLC, Ryan Gilbertson Family 2012 Irrevocable Trust LLC, and Total Depth Foundation.

60.     Though the documents purported to clarify ownership, they were contradicted by the research of Plaintiffs, which uncovered Total Depth's filings with the State of Minnesota.

61.     Total Depth's filings with the State of Minnesota listed Ryan Gilbertson as the "Contact Person" for the Total Depth and provided Mr. Gilbertson's residential address (1675 Neal Avenue, Delano, MN 55328) as the address associated with the organization.

62.     These records gave Plaintiffs additional reasons to worry that funds payed to Total Depth may be inappropriately siphoned. For each of the four years Total Depth has filed reports with the Attorney General they have spent $0 on "Program or Charitable Purposes." In each of the four reports, Total Depth reports between $8,800 and $16,400 in "Management/General Expense[s]", $0 in "fundraising expense[s]," and between $110,203 and $315,203 in "Total Expenses" (the vast majority of which are uncategorized and not charitable).

63.     Further concerns were raised by the documents Defendants furnished to encourage release of the Escrow Funds. In particular, a letter from Defendants' accountant raised additional red flags for Plaintiffs.

64.     None of the documents provided by Defendants demonstrated that the financial Penalties had been satisfied.

65.     In light of the inadequate documentation, Plaintiffs could not release the Escrow Funds.

**D.     Fears of Conspirator Liability or Conflicting Claims**

66.     Plaintiffs are reasonably concerned that, Defendants in seeking to force them to release funds early and in defiance of the terms of the Equity Purchase Agreement, may be attempting to use Plaintiffs to fraudulently convey funds to evade paying financial Penalties imposed by Judge Schiltz.

67.     Plaintiffs do not claim any entitlement to the Escrow Funds, but they are concerned that any effort to disburse the funds may result in competing claims or prosecutorial interest.

68.     Plaintiffs feel compelled to bring this suit to determine to whom the money is owed. Absent this Court's determination, Plaintiffs are concerned that they may face competing demands for the money from RRG, Gilbertson Family Trust, Total Depth and the United States, as well as accusations of complicity by the United States.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Securities Fraud in Violation of Section 10(b) of the Securities Exchange Act of 1934
and Rule 10b-5 of the Securities and Exchange Commission Against All Defendants)**

69.     Plaintiffs incorporate paragraphs 1 through 68 as if fully set forth herein.

70.     The sale of the shares of Purchased Equity by Defendants to Plaintiffs qualifies as the sale of a security within the meaning of, *inter alia*, the Securities Act of 1933 and the Securities Exchange Act of 1934.

71.     Defendants committed securities fraud in connection with the sale of Purchased Equities to Plaintiffs by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase and sale of securities knowingly (a) employing devices, schemes or artifices to defraud and (b) engaged in acts, practices or courses of business which operated as a fraud or deceit upon Plaintiffs, who purchased the securities offered by Defendants.

72.     Defendants made misstatements or omissions of material facts including, but not limited to: misrepresenting the value of accounts receivable, concealing or underreporting outstanding financial obligations, and wholly omitting mention of several large, imprudent, and onerous contracts, all as described in paragraphs 40-50, which are incorporated herein;

73.     Defendants made the foregoing misstatements or omissions of material facts with knowledge and the intent that Plaintiffs rely thereon.

74.     Defendants' misrepresentations or omissions of material facts are the actual and proximate cause of Plaintiffs' injuries. But for the misrepresentations and omissions, Plaintiffs would not have entered into the Equity Purchase Agreement. Moreover, the fraudulent statements or omissions were the cause of the actual loss suffered by Plaintiffs in excess of $5 million.

75.     By virtue of the foregoing, Defendants, and each of them, violated Section 10(b) of the Securities Exchange Act, 15 U.S.C. 78j(b) and Rule 10b-5 thereunder, C.F.R. § 240.10b-5.

## SECOND CLAIM FOR RELIEF
### (Fraud Against All Defendants)

76.     Plaintiffs incorporate paragraphs 1 through 68 as if fully set forth herein.

77.     Defendants committed fraud to induce Plaintiffs to enter into the Equity Purchase Agreement and acquire Purchased Equity.

78.     Defendants made misstatements or omissions of material facts with the intent to induce Plaintiffs to enter into the Equity Purchase Agreement. Those misstatements or omissions of material facts include, but are not limited to, misrepresenting the value of accounts receivable, concealing or underreporting outstanding financial obligations, and wholly omitting mention of several large, imprudent, and onerous contracts, all as described in paragraphs 40-50, which are incorporated herein;

79.     At the time Defendants made the foregoing representations Defendants knew that said representations were false. Defendants thus made the foregoing going false representations of material fact with actual knowledge that said representations were false, and with the intent that Plaintiffs rely on those representations and to induce the Plaintiffs to enter into the Equity Purchase Agreement.

80.     Defendants also omitted information material to the transaction. Specifically, Defendants withheld material information revealing the true value of Purchased Equity and potential sources of liability.

81.     Plaintiffs reasonably relied on Defendants' misrepresentations or omissions of material facts.

82.     Defendants' misrepresentations or omissions of material facts are the actual and proximate cause of Plaintiffs' injuries. But for the misrepresentations or omissions, Plaintiffs would not have entered into the Equity Purchase Agreement. Moreover the fraudulent statements or omissions were the cause of the actual loss suffered by Plaintiffs in excess of $5 million.

### THIRD CLAIM FOR RELIEF
### (Breach of Contract)

83.     Plaintiffs incorporate paragraphs 1 through 68 as if fully set forth herein.

84.     On October 17, 2018, Plaintiffs and Defendants entered into the Equity Purchase Agreement.

85.     Pursuant to the terms of the Equity Purchase Agreement, Defendants made a series of representations. As relevant to this case, Defendants represented:

- § 2.7(a) Each Company Entity's financial statements, as heretofore furnished to Purchaser (the "Financial Statements"), fairly reflect, in all material respects, such Company Entity's financial performance as the dates and during the periods presented. As of the date on which the Financial Statements of each Company Entity were last provided to Purchaser, no Company Entity had any material obligation, contingent liability, liability for taxes or long-term lease obligation which is not reflected in such Financial Statements, or in the notes thereto.

- § 2.8 Absence of Certain Changes, Events and Conditions. Since December 31, 2017, and other than in the ordinary course of business, there has not been, with respect to Seller, any Company Entity or their respective businesses, any state of facts, event, circumstance, development, change or effect that, individually or in the aggregate: (a) would materially delay, prevent, materially limit or materially impair Seller and the Company Entities from being able to perform their obligations under and in accordance with the terms of the Transaction Documents, or to consummate the transactions contemplated by the Transaction Documents, or (b) has had or would reasonably be expected to have a material adverse effect on the Company Entities' respective business, condition (financial or otherwise), results of operations, assets or liabilities.

- § 2.9 Absence of Undisclosed Liabilities. The Company Entities have no liabilities or obligations, whether accrued, absolute, contingent, unliquidated or otherwise, whether due or to become due, whether known or unknown, and regardless of when asserted, arising out of transactions or events heretofore entered into, or any action or inaction, or any state of facts existing, with respect to or based upon transactions or events heretofore occurring, except for liabilities

accrued for on the Financial Statements and (b) liabilities arising in the ordinary course of business since the date of the Financial Statements that are neither material in amount or effect.

- § 2.15 Contracts. Schedule 2.15 lists each material contract to which any Company Entity is a party or by which any of their respective assets are bound, including the Leases (each contract so listed or required to be so listed being a "Major Contract"). Seller has delivered to Purchaser a true, correct and complete copy of each Major Contract. With respect to each Major Contract (a) such terms against the Company Entities and, to the Knowledge of Seller, against each other party thereto and such Major Contract will continue to be so legal, valid, binding, in full force and effect and enforceable on identical terms upon the consummation of the transactions contemplated herein, (b) the Company Entities are not in breach of or default under and, to the Knowledge of Seller, no other party thereto is in material breach of or default under such Major Contract, and (c) no party to such Major Contract has terminated or modified such Major Contract or any material right or liability thereunder or communicated such party's intent to do so.

- § 2.19 Full Disclosure. No representation or warranty by Seller in this Agreement or any certificate or other document furnished or to be furnished to Purchaser pursuant to this Agreement contains any untrue statement of a material fact, or omits to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they are made, not misleading.

86.     Defendants have breached each and all of those representations as detailed in

paragraphs 40-50, which are incorporated herein;

87.     Defendants various breaches of the Equity Purchase Agreement have caused

Plaintiffs damages in an amount to be proven at trial, but reasonably approximated at $5 million.

## FOURTH CLAIM FOR RELIEF
### (Declaratory Judgment that Plaintiffs Have Not Received Adequate Assurances and thus Cannot Release of the Escrow Funds at Defendants' Request)

88.     Plaintiffs incorporate paragraphs 1 through 68 as if fully set forth herein.

89.     Pursuant to the Equity Purchase Agreement, Plaintiffs were bound to release the

Escrow Funds (a) "to the applicable Governmental Entity to satisfy Seller's (or its Affiliates')

financial penalties related to Seller's convictions for wire fraud, conspiracy to commit securities

fraud and securities fraud in United States of America v. Ryan Randall Gilbertson, No. 17-CR-

0066," or (b) "to Seller 1, Seller 2, Seller 3 and Seller 4 in accordance with their respective pro

rata portions . . . if and only if Seller (or its Affiliates) have satisfied the Penalties and has

provided Purchaser documentary proof, reasonably satisfactory to Purchaser, of satisfactions of

the Penalties."

90.     Plaintiffs have not yet received documentary proof that Seller has "satisfied the

Penalties."

91.     Absent such proof, Plaintiffs cannot release the funds to Defendants in pro rata

shares.

92.     Plaintiff seek this Court's Declaratory Judgment that (a) Plaintiffs have not

received documentary proof of satisfactions of the Penalties, and (b) Plaintiffs cannot therefore

release the Escrow Funds to Defendants in pro rata shares.

**FIFTH CLAIM FOR RELIEF**
**(Interpleader under 28 U.S.C. § 1335)**

93.     Plaintiffs incorporate paragraphs 1 through 68 as if fully set forth herein.

94.     Plaintiffs are subject to competing claims on the Escrow Fund from Defendant

Gilbertson to satisfy his Penalties, from the remaining Defendants (which contend they cannot

satisfy the Penalties), and from the United States.

95.     Absent this Court's indulgence of Plaintiffs' request for interpleader, Plaintiffs

will likely be subject to multiple liability for the same Escrow Funds.

**VI.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor, and against

Defendants, awarding Plaintiffs:

1.      compensatory damages in an amount appropriate to compensate them for

damages caused by Defendants' fraud and other wrongful conduct in an amount to be determined

at trial;

2.      compensatory damages caused by Defendants' breach of contract in an amount to be determined at trial;

4.      their costs, attorneys' fees pursuant to contract or otherwise, prejudgment interest, and post judgment interest;

5.      a declaration that Defendants have not provided Plaintiffs with adequate assurances needed to release the Escrow Account;

6.      distribution of the Escrow Funds as among Defendants and the U.S. Government; and

5.      any other relief that the Court deems just and appropriate.


Dated this 8th day of January, 2019.

DORSEY & WHITNEY (DELAWARE) LLP

   /s/ Alessandra Glorioso
Eric Lopez Schnabel (DE Bar No. 3672)
Alessandra Glorioso (DE Bar No. 5757)
300 Delaware Avenue, Suite 1010
Wilmington, Delaware 19801
Telephone: (302) 425-7171
Facsimile: (302) 425-7277
Email:  schnabel.eric@dorsey.com
            glorioso.alessandra@dorsey.com

RJ Zayed (*pro hac vice* application forthcoming)
Erin Conti (*pro hac vice* application forthcoming)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone: (612) 492-6132
Facsimile: (612) 573-6650
Email:  zayed.rj@dorsey.com
            conti.erin@dorsey.com

Attorneys for Plaintiffs APEX Financial Options, LLC
and Gopher Financial, LLC