

300 Delaware Avenue • Suite 200 • Wilmington, Delaware 19801
Tel: (302) 472 7300 • Fax: (302) 472.7320 • www.hegh.law

Direct Dial: 302-472-7307
Email: gandrews@hegh.law

April 26, 2021

**VIA CM-ECF**
The Honorable Leonard P. Stark
United States District Court
844 N. King Street, Room 2124
Wilmington, DE 19801-3555

      RE:    Apex Financial Options, LLC, et al. v. Ryan Gilbertson, et al.,
              Case No. 1:19-cv-00046-LPS-SRF

Dear Chief Judge Stark:

      Defendants submit this letter objection to Magistrate Judge Sherry R. Fallon's April 12, 2021 Order regarding Plaintiffs' motion for leave to file a second amended complaint (D.I. 85), per Fed. R. Civ. P. 72(b)(2), and local rule 72.1(b). In the event the Court sustains Defendants' objection, the Court should also reject Judge Fallon's report and recommendation on Defendants' motion for judgment on the pleadings (D.I. 109), which is based soley on mootness because of Court's order granting Plaintiffs' leave to amend. Under Rule 72(a), the Court is required to modify or set aside any portion of a magistrate order that is either clearly erroneous or contrary to law. Magistrate Judge Fallon's April 12, 2021 Order is both.

      *First*, Judge Fallon's finding that Defendants did not argue they would be prejudiced if the Court granted Plaintiffs' motion is clearly erroneous. Contrary to Judge Fallon's finding, Defendants argued that granting Plaintiffs leave to add rescissory damages would be "highly prejudicial." (D.I. 91 at 4). As set forth in Defendants' Answering Brief, the case law recognizes the prejudicial nature of untimely requests and "[i]t is a well-established principle of equity that a plaintiff waives the right to rescission by excessive delay in seeking it." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 174 (Del. 2002) (internal quotation omitted); *accord Ryan v. Tad's Enterprises, Inc.*, 709 A.2d 682, 699 (Del. Ch. 1996), *aff'd*, 693 A.2d 1082 (Del. 1997). (D.I. 91 at 4).

      In *Gotham* the Delaware Supreme Court affirmed the denial of rescission where the plaintiff made the conscious decision to sit back and let the defendant take the risk for two years before bringing a claim for rescission. *Gotham Partners*, 817 A.2d 174. Similarly, in *Ryan*, the court rejected the plaintiffs' request for rescission or rescissory damages in light of their three-year delay in asserting breach of fiduciary duty claims in connection with a merger. *Ryan*, 709 A.2d at 699. In that case, as here, the plaintiffs commenced their action concurrently with the merger and only sought rescission or rescissory damages near the end of the litigation. *Id*. at 668–69.

      The prejudice to Defendants in allowing Plaintiffs to seek rescissory damages two years after commencing this action is apparent. Plaintiffs knew almost immediately of their potential claims.



The Hon. Leonard P. Stark
April 26, 2021
Page 2

Instead of seeking rescission or rescissory damages at that time, when Plaintiffs were optimistic about the Wisconsin white sand market, they sat back while the sand market declined and the business went bankrupt. Principles of equity do not allow Plaintiffs to get cold feet and unwind a sale years after these intervening factors.

Further, the Court did not consider the calculated timing of Plaintiffs' request for rescissory damages in correlation with Defendants' motion for a judgment on the pleadings (D.I. 58), which laid bare the identical nature of Plaintiffs' alleged damages under their fraud and breach of contract claims. Plaintiffs argue that their amendments are neutral since they "do not seek to add any legal claims" or "change the legal theories" and instead "give [Defendants] a very clear roadmap to Plaintiffs' arguments." (D.I. 86 at 5). This is untrue. After Defendants filed their motion for a judgment on the pleadings, Plaintiffs realized that they had not adequately pled damages for their fraud claim. Plaintiffs' last-minute addition of rescissory damages has nothing to do with a purported discovery revelation but rather is an unmistakable Hail Mary pass to save their fraud claim. *See* (D.I. 59) and (D.I. 73). Punitive and rescissory damages are not mere points on a roadmap, but rather fundamentally alter the course of this litigation.

Moreover, if Plaintiffs intended to seek rescissory damages, they should have given Defendants a "roadmap" when they initially filed the Complaint and sought to freeze the money held in the escrow account from day one. Instead, Plaintiffs forced the funds held in escrow to be remitted to the U.S. Government through their interpleader action. *See* Am. Compl. ¶¶ 94–98 (D.I. 3). That money is now gone, and so is Plaintiffs' ability to seek rescission or rescissory damages. Allowing Plaintiffs to seek rescissory damages after they ensured escrow funds would not be available to resolve any dispute between the parties is highly prejudicial.

*Second*, Judge Fallon's finding that Plaintiffs possessed good cause for their untimely amendment is contrary to law and clearly erroneous. The Court did not analyze Plaintiffs unsupported allegation that they have received "newly discovered evidence." But in the context of an untimely motion for leave to amend, a plaintiff must *establish* good cause exists for the delay. *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) (good cause must be meet first before Rule 15(a)'s more liberal standard). And as it relates to rescissory damages, case law makes clear that it is Plaintiffs' burden to prove promptness in seeking rescissory damages and not Defendants' burden to prove unnecessary delay. *Gotham Partners,* 817 A.2d at 174.

Plaintiffs' claim that they have good cause to file a Second Amended Complaint a *full year* after the deadline set forth the in scheduling order does not survive scrutiny. (D.I. 28 ¶ 2 (December 3, 2019, deadline for motions to amend the pleadings)). In their opening brief, Plaintiffs claim only two "examples" of alleged "new information": (1) that Defendants allegedly overstated inventory and (2) that Defendant Ryan Gilbertson had an ownership interest in Chetek Express. (D.I. 86 at 9-10). Both assertions are false and are premised on documents that Plaintiffs have had *since October 16, 2019*, (D.I. 23), and likely had access to before this lawsuit was commenced, as the majority owner of the company and custodian of these documents. (D.I. 92). Plaintiffs fail to tie each proposed amendment to "new information" that they could not have discovered before the motion to



The Hon. Leonard P. Stark
April 26, 2021
Page 3

amend deadline on December 3, 2019.

Plaintiffs cannot show that the alleged "new" information regarding inventory is related to their proposed amendment. Instead, discovery showed that both the external auditor and internal accountant described the process for preparing the inventory calculation and stated that they believed the inventory calculation to be accurate. (D.I. 92 at Ex. G (Addo Depo at 81:4–11)); (*id*. at Ex. J (Huhn Depo at 158:1–24)). Plaintiffs seem to admit that their new inventory allegation is not tethered to deposition testimony by stating they believed the inventory valuation was incorrect and had to be restated in the "summer of 2019," well before the amendment deadline (D.I. 86 at 9). Plaintiffs' claim that they now "newly" discovered the inventory was overstated on the balance sheet exceeds the limits of credulity where Plaintiffs ran the business and calculated inventory for years after the sale.

Plaintiffs' "new information" relating to their allegation that Mr. Gilbertson owned a stake in Wildcat, which had an ownership interest in Chetek Express (D.I. 86 at 9), also has no relation to their proposed amendments. During the deposition of Chris Johnson, he testified that "Wildcat was bought out in a series of transactions," and the transaction on May 25, 2018 "would have been one of them." Mr. Johnson proceeded to testify that he was "not really sure" the reason for the "two different dates" and opines that "[m]aybe [his attorney] lost" the original or "maybe we never got signatures" when the sale occurred. He just "honestly" did not know. Plaintiffs further omit the fact that their alleged "new evidence" is built in part on documents they had since 2019, which neither Mr. Johnson's testimony nor the documents he produced contradict. Contrary to Plaintiffs' assertion (D.I. 93 at 5), Defendants have been unequivocal in their position that Mr. Gilbertson had no direct or indirect ownership in Chetek Express at the time the parties entered into negotiations in August 2018. (*See* D.I. 91 at 5). Defendants' position is consistent with the evidence and Plaintiffs gained no "new information" from the depositions that ties in anyway to their proposed amendments.

Judge Fallon did not consider the key question of whether Plaintiffs' alleged "newly discovered evidence" relates to rescissory or punitive damages. The answer is unequivocally no, as Plaintiffs fail to connect the alleged "newly discovered evidence" to their proposed amendments. Plaintiffs are opaque in their briefs, failing to offer any specific document, deposition transcript, or discovery request to support that good cause exists to allow them to amend the complaint after a multi-year dealy. Rather than putting Plaintiffs to the burden of proving promptness in seeking rescissory damages, as the Court must, Judge Fallon erroneously found that it would be inappropriate to weigh the evidence at that stage. For the reasons stated above, as well as in Defendants' Answering Brief (D.I. 91), Defendants request that the Court sustain Defendants' objection and deny Plaintiffs' motion. Should Your Honor have any questions, we are available at the convenience of the Court.

                 Respectfully submitted,

                 */s/ Gillian L. Andrews*

                 Gillian L. Andrews (#5719)

cc: Counsel of Record