IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APEX FINANCIAL OPTIONS, LLC and GOPHER FINANCIAL, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> RYAN GILBERTSON, et al., <br><br> Defendants. | Civil Action No. 19-046-WCB-SRF |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this breach of contract and fraud action are cross-motions for partial summary judgment filed by Defendants Ryan Gilbertson ("Mr. Gilbertson"), RRG Family Capital LLC ("RRG"), Ryan Gilbertson Family 2012 Irrevocable Trust ("Gilbertson Trust"), and Total Depth Foundation, Inc. ("Total Depth") (collectively, "Defendants") (D.I. 135)[1] and Plaintiffs Apex Financial Options, LLC ("Apex") and Gopher Financial, LLC ("Gopher") (collectively, "Plaintiffs") (D.I. 148).[2] For the following reasons, the court recommends DENYING both Defendants' and Plaintiffs' motions for partial summary judgment.

---

[1] The briefing for Defendants' pending motion is as follows: Defendants' opening brief (D.I. 136), Plaintiffs' answering brief (D.I. 181), and Defendants' reply brief (D.I. 188). Defendants seek summary judgment against all Defendants on the securities fraud and common law fraud claims at Counts I-II and summary judgment against Gilbertson Trust and Total Depth on the breach of contract claim at Count III of Plaintiffs' Second Amended Complaint (D.I. 111).
[2] The briefing for Plaintiffs' pending motion is as follows: Plaintiffs' opening brief (D.I. 149), Defendants' answering brief (D.I. 177), and Plaintiffs' reply brief (D.I. 191). Plaintiffs seek summary judgment on the breach of contract claim at Count III of Plaintiffs' Second Amended Complaint (D.I. 111).

## II. BACKGROUND

### a. Procedural History

Apex and Gopher initiated this action on January 8, 2019, when they filed the original complaint against Mr. Gilbertson and RRG, Gilbertson Trust, and Total Depth ("Defendant Entities"), asserting securities fraud, common law fraud, and breach of contract claims, and seeking a declaratory judgment and interpleader, all arising from an Equity Purchase Agreement (the "Agreement") the parties entered into on October 17, 2018. (D.I. 1) Before any Defendant filed a responsive pleading, Plaintiffs filed a First Amended Complaint (the "FAC") on April 8, 2019, realleging the same causes of action as the original complaint and adding the United States of America as a defendant.[3] (D.I. 3)

On September 29, 2020, Defendants filed a partial motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), seeking dismissal of the securities fraud and common law fraud claims. (D.I. 58) Shortly after briefing was completed, Plaintiffs filed a motion for leave to file a Second Amended Complaint (the "SAC"). (D.I. 85) Therefore, the court denied as moot Defendants' motion for partial judgment on the pleadings. (D.I. 109; D.I. 133) On April 13, 2021, Plaintiffs filed a Second Amended Complaint (the "SAC"), providing additional facts to support their existing claims, as well as requests for punitive and rescissory damages. (D.I. 111)

On September 17, 2021, the parties each filed motions for partial summary judgment. (D.I. 135; D.I. 148)

---

[3] The United States of America was dismissed with prejudice from the case on December 2, 2019, pursuant to a stipulation of dismissal. (D.I. 31)

b. Facts

Plaintiffs allege that, in or about August 2018, Mr. Gilbertson approached Peter Hajas ("Mr. Hajas"), the sole member of both Apex and Gopher, to determine whether Mr. Hajas would consider purchasing Defendants' shares (the "Purchased Equity") of various entities[4] who controlled Northern Industrial Sands, LLC ("NIS" or the "Company"), "a company that mined, processed, and delivered . . . frac sand." (D.I. 111 at ¶¶ 2, 4-5) On October 17, 2018, Plaintiffs acquired the Purchased Equity through the Agreement. (*Id.* at ¶ 7) Plaintiffs allege that Defendants made "a series of material misrepresentations" during the negotiations designed to "entice" Plaintiffs into buying the Purchased Equity at a "grossly inflated price." (*Id.* at ¶¶ 42-60)

III. **LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the

---

[4] These entities are as follows: Northern Capital Partners I, LP; Northern Capital Partners I, GP, LLC; Northern Capital Group LLC; NI Sand Holding, LLC; and NIS Investment Holding, LLC. (D.I. 111 at ¶ 4) The court refers to the shares of these entities collectively as the "Purchased Equity." (*See id.*)

3

moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute. . . ." Fed. R. Civ. P. 56(c)(1). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

When cross-motions for summary judgment are filed, the party seeking summary judgment must still identify "those portions of the [record]…which it believes demonstrate the absence of a genuine issue of material fact," and the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Conoshenti v. Public Service Elec. & Gas Co.*, 364 F.3d 135, 145 (3d Cir. 2004) (citing *Celotex Corp.*, 477 U.S. at 323 (1986); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007); *Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 431 (3d Cir. 1997).

## IV. DISCUSSION

### a. Defendants' Motion for Partial Summary Judgment[5]

#### i. Securities Fraud, Count I, Against All Defendants

Defendants argue that Plaintiffs fail to demonstrate that each Defendant made a deliberate or reckless misrepresentation as required for a securities fraud claim under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 of the Securities and Exchange Commission. (D.I. 136 at 19-20); *See* 15 U.S.C. § 78j(b); *See* 17 C.F.R. § 240.10b-5. Defendants assert that Plaintiffs cannot impute the Company's knowledge onto Mr. Gilbertson solely because of his position in the Company and similarly cannot impute Mr. Gilbertson's or the Company's knowledge onto Defendant Entities. (D.I. 136 at 19-20) According to Defendants, Mr. Gilbertson represented that he wanted all information provided to Plaintiffs to be accurate. (*Id.*) Defendants also assert that Defendant Entities were only passive shareholders and that the Agreement makes clear that they were only added to the deal after the alleged fraudulent statements during negotiation were made. (*Id.*) In response, Plaintiffs assert that Mr. Gilbertson had an integral role in generating, reviewing, and providing to Plaintiffs the Company's financial information. (D.I. 181 at 13-14) Plaintiffs also assert that Mr. Gilbertson testified as a Rule 30(b)(6) witness that he acted during negotiations on behalf of all Defendant Entities. (D.I. 181 at 19)

---

[5] At the outset, Defendants' motion is drafted without regard to the requirement that the facts shall be viewed in the light most favorable to the non-moving party. *See Scott*, 550 U.S. at 380. Moreover, Defendants have not crafted their arguments to identify any undisputed material facts. They have attached a voluminous record consisting of three declarations, in which the Declaration of Amy S. Connors (D.I. 139) incorporates Exhibits A through AP, but have failed to include pin cites to the record in the briefs. Notwithstanding the foregoing, the court has thoroughly considered Defendants' briefing.

To state a claim for a violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 of the Securities and Exchange Commission, "a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008); 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Scienter requires a showing that the "defendant made a deliberate or reckless misrepresentation." *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 502 (D. Del. 2001). Recklessness is defined as "an extreme departure from the standards of ordinary care…which presents a danger of misleading…that is either known to the defendant or is so obvious that the actor must have been aware of it." *Healey v. Catalyst Recovery of PA, Inc.*, 616 F.2d 641, 649 (3d Cir. 1980) (internal citations omitted). A securities fraud plaintiff "may not impute knowledge of…financial infirmities to defendants solely by nature of the positions that the defendants held." *In re Reliance Sec. Litig.*, 135 F. Supp. 2d at 507. "[T]o prove scienter…[c]ircumstantial evidence may often be the principal, if not the only, means of proving bad faith." *See McLean v. Alexander*, 599 F.2d at 1190, 1198 (3d Cir. 1979). However, "determination of whether a party acted with scienter, intertwined as it may be with an assessment of witness credibility, often cannot be undertaken appropriately on summary judgment proceedings." *In re IKON Office Solutions, Inc.*, 277 F.3d 658, 668 (3d Cir. 2002).

The court recommends denying Defendants' motion for summary judgment as to Count I because a genuine issue of material fact exists as to Mr. Gilbertson's and Defendant Entities' scienter. Beyond identifying the scienter element of a securities fraud claim, Defendants make no effort to identify the elements of the cause of action nor do they argue how the undisputed

6

facts fail to satisfy them. (D.I. 136 at 19-20) Further, Defendants rely on conclusory denials and make no effort to view the facts in the light most favorable to Plaintiffs. (*Id.*)

Plaintiffs contend, and the record confirms, that Mr. Gilbertson's involvement in generating, reviewing, and providing to Plaintiffs the Company's financial information, including specific receivables, is a disputed fact. (D.I. 181 at 13-14; D.I. 182, Ex. 3 at 42:14-25, 122:14-23, Ex. 4 at 35:4-11; D.I. 183, Ex. 7 at 227:16-228:15) For example, Plaintiffs cite Mr. Hajas' testimony that Mr. Gilbertson, "on behalf of himself and the seller," sent to Mr. Hajas the Company's financials which included the inventory amounts now in dispute. (D.I. 183, Ex. 7 at 227:16-228:15)

Plaintiffs also introduce Mr. Hajas' testimony that Mr. Gilbertson represented, as did the Agreement itself, that all material contracts were disclosed. (D.I. 183, Ex. 7 at 163:21-164:3) However, Mr. Gilbertson, as a Rule 30(b)(6) witness, testified that he did not recall providing to Plaintiffs a copy of the six contracts at issue. (D.I. 152, Ex. 5 at 203:20-205:8, 218:7-221:20, 223:11-226:22) Notably, in Defendants' answering brief in opposition to Plaintiffs' motion, Defendants contend that factual disputes exist as to Defendants' obligation to list the contracts in question on Schedule 2.15 either because the contracts were not material or because Plaintiffs had general familiarity with the Company's trucking, transloading, and rail transportation relationships. (D.I. 177 at 3-5, 7-8) Thus, Plaintiffs have proffered circumstantial evidence sufficient to permit a reasonable jury to find that Mr. Gilbertson was at least reckless in the alleged nondisclosures. *See Healey*, 616 F.2d at 649.

Additionally, although Defendants contend that Defendant Entities were not involved in the transaction, Mr. Gilbertson testified as a Rule 30(b)(6) witness that he negotiated the Agreement price on behalf of all Defendant Entities. (D.I. 182, Ex. 6 at 4:20-5:10; 30:19-22;

33:22-25; 39:12-18) Mr. Gilbertson also had a beneficial ownership interest in RRG, and state records listed him as the "Contact Person" for Total Depth. (D.I. 149 at 3 n.3; D.I. 152, Ex. 3 at 66:6-10; D.I. 118 at ¶ 15) Thus, circumstantial evidence in the record creates a genuine dispute as to whether Defendant Entities made deliberate or reckless misrepresentations. Therefore, the court recommends denying Defendants' motion for summary judgment as to Count I.

### ii. Common Law Fraud, Count II, Against All Defendants

#### 1. Distinct Damages

Defendants argue that Plaintiffs cannot show distinct damages for their fraud claim to withstand summary judgment. (D.I. 136 at 8-10) Defendants include in their opening brief a chart purporting to show that Plaintiffs' damages expert, Timothy Nantell, ties his damages conclusions to alleged misrepresentations in the Agreement. (*Id.*) Defendants contend that this is indicative of only breach of contract damages that cannot support Plaintiffs' common law fraud claim. (*Id.*) Defendants also argue that Plaintiffs' fraud claim cannot be saved by their request for punitive or rescissory damages. (*Id.* at 10)

In response, Plaintiffs argue that they have established separate damages for their common law fraud and breach of contract claims. (D.I. 181 at 9-10) Plaintiffs assert that their requests for relief in the SAC include damages arising from the investigation of Defendants' fraud and legal fees Plaintiffs incurred in seeking to resolve outstanding liabilities undisclosed by Defendants. (*Id.*) Plaintiffs also assert that their common law fraud claim survives because they specifically seek in the SAC rescissory damages. (*Id.*)

These damages are separate from Plaintiffs' claim for damages allegedly resulting from breach of the Agreement. Traditional breach of contract damages include expectation or consequential damages, reliance damages, and restitution damages. *See ATACS Corp. v. Trans*

*World Comm., Inc.*, 155 F.3d 659, 669 (3d Cir. 1998). Delaware law is clear that fraud and breach of contract damages must be distinct. *See Firmenich Inc. v. Nat. Flavors, Inc.*, 2020 WL 1816191, at *5 (Del. Super. Ct. Apr. 7, 2020) (internal citations omitted) ("fraud damages allegations can't simply 'rehash' the damages that were allegedly caused by the claimed breach of contract"). However, the scope of fraud damages under Delaware law is broad and allows a "plaintiff…[to] recover for any injury resulting from the direct and natural consequences of [the plaintiff] acting on the strength of the defendant's statements." *LCT Capital, LLC v. NGL Energy Partners LP*, 249 A.3d 77, 91 (Del. 2021) (internal quotations omitted). A request for rescissory damages is an equitable remedy that, "in its purest form…seeks to 'unmake' or 'cancel' an agreement and to return the parties to the *status quo ante*." *Catamaran Acquisition Corp. v. Spherion Corp.*, 2001 WL 755387, at *4 (Del. Super. Ct. May 31, 2001) (internal citations omitted). Under Delaware law, "rescissory damages based on a fraud claim are distinguishable from breach of contract damages." *Firmenich*, 2020 WL 1816191, at *10; *See ITW Glob. Invs. Inc. v. Am. Indus. Partners Capital Fund IV, LP*, 2015 WL 3970908, at *7, n. 103 (Del. Super. Ct. June 24, 2015); *See also Novipax Holdings LLC v. Sealed Air Corp.*, 2017 WL 5713307, at *14 (Del. Super. Ct. Nov. 28, 2017). The court in *Novipax* noted that "[t]his court has twice held that a claim for rescission or rescissory damages separates a fraudulent inducement claim from breach of contract damages." *Novipax*, 2017 WL 5713307, at *14.

The court recommends denying Defendants' motion for summary judgment as to Count II. As an initial matter, Defendants' arguments regarding duplicative damages, including their argument in footnotes about rescissory damages, are conclusory and fail to identify undisputed facts. (D.I. 136 at 8-10) Defendants have, again, made no effort to view the facts in the light most favorable to the non-movant. Plaintiffs have raised a material issue as to whether their

9

alleged damages for fraud and breach of contract are distinct. (D.I. 181 at 9-10) Plaintiffs seek damages arising from the investigation of Defendants' fraud, including compensatory damages and legal fees Plaintiffs incurred in seeking to resolve outstanding liabilities undisclosed by Defendants. (D.I. 111 at ¶ 1, Prayer for Relief ¶¶ 1-4) Plaintiffs also separately seek rescissory damages. (*Id.*) The court recommends denying Defendants' motion for summary judgment as to Count II.

### 2. False Representation and Justifiable Reliance

Defendants also seek summary judgment on the common law fraud claim on the grounds that Plaintiffs have failed to show that Defendants made any false representation upon which Plaintiffs justifiably relied.[6] (D.I. 136 at 11) Under Delaware law, fraud consists of (1) a false representation made by the defendant; (2) the defendant's knowledge of the falsity or reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) justifiable reliance on the part of the plaintiff; and (5) damages to the plaintiff as a result of such reliance.[7] *See Stephenson*, 462 A.2d at 1074.

The parties' arguments under elements one and two largely mirror their securities fraud contentions in section IV.a.i, *supra*. Additionally, Defendants argue that the record contains no evidence that Mr. Gilbertson intentionally made misrepresentations regarding inventory,

---

[6] Defendants contend that Plaintiffs are required to show that Defendants had a duty of disclosure. (D.I. 136 at 10) (citing *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006)). However, as Plaintiffs note, an independent duty is only required under the silence theory of fraud, and not required when asserting fraud under the misrepresentation and deliberate concealment theories applicable to this case. *See Bay Ctr. Apts. Owner, LLC v. Emery Bay PKI, LLC*, 2009 WL 1124451, at *11 (Del. Ch. Apr. 20, 2009) (citing *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983)).

[7] The parties do not directly address elements three and five when examining common law fraud in their briefing. Accordingly, the court will not address these elements. *See Madero v. Luffey*, 439 F. Supp. 493, 512 (W.D. Pa. 2020).

employee bonuses, material contracts, or collectability of accounts receivable. (D.I. 136 at 13-15) Defendants argue that they used both internal and outside accountants to prepare the financial statements and that the Company's counsel, not Mr. Gilbertson, was responsible for drafting the schedules and listing all contracts required under the Agreement. (*Id.*) Defendants also assert that employee bonuses and salary increases were not accrued because they were not yet awarded and there was no present commitment to pay. (*Id.* at 13-14) Defendants further contend that Plaintiffs only requested accounts receivable information as of June 30, 2018. (*Id.* at 15)

Regarding element four, Defendants assert that Plaintiffs failed to perform proper due diligence despite having access to all information relevant to the Company's valuation. (D.I. 136 at 15) Moreover, Defendants assert that the inventory amount provided by Defendants did not alter Plaintiffs' valuation of the Company and that Plaintiffs' due diligence revealed information regarding each alleged undisclosed contract, past employee bonuses and salary increases, and aging accounts receivable. (*Id.* at 16-18) Plaintiffs respond that they conducted thorough due diligence, but Defendants' concealment and misrepresentations undermined Plaintiffs' efforts to obtain accurate information. (D.I. 181 at 17-18)

Defendants fail to carry their burden in establishing the absence of a genuine issue of material fact and make no effort to view the evidence in the light most favorable to Plaintiffs. Defendants defeat their own motion by denying the Plaintiffs' allegations in conclusory fashion and highlighting the material disputes of fact between the parties concerning the disclosures and representations made in connection with the Agreement. For example, Defendants acknowledge that Plaintiffs dispute the method used to calculate the inventory's value, stating "Plaintiffs do not dispute the existence or volume of sand inventory, but rather the method used to calculate its

value and accrued costs on the balance sheet." (D.I. 136 at 13) Similarly, Defendants note that "Plaintiffs contend that employee bonuses that were determined and paid several weeks after the close of the Agreement…should have been accrued," but Defendants then dismiss their involvement in calculating bonuses and contend that those responsible dispute whether prior to the closing, any employee bonuses or salary increases were determined, paid, or should have been accrued. (*Id.* at 13-14) With respect to alleged undisclosed contracts, Defendants acknowledge that Plaintiffs allege they were unaware of certain contracts before the closing, yet the Defendants dispute any obligation to disclose those contracts. (*Id.* at 14-15)

As to element four, the issue of reliance is a question of fact, not generally susceptible to determination on summary judgment. *See, e.g., In re Tyson Foods Secs. Litig.*, C.A. No. 01-425-SLR, 2003 WL 22316548, at *5, n. 1 (D. Del. Oct. 6, 2003) ("Exactly what plaintiff relied upon in purchasing and selling his shares…is a question of fact") (internal quotations omitted). The adequacy of the Plaintiffs' due diligence in this transaction is at the core of the parties' dispute. Nonetheless, Defendants have, again, defeated their own arguments by their reliance on disputed facts. For example, Defendants assert that "Plaintiffs contend that they asked for 'all contracts.'" (D.I. 136 at 17) Defendants, however, dispute their obligation to disclose certain contracts, arguing either that the contracts were not material or that Plaintiffs should have been aware of them due to their familiarity with the Company's trucking, transloading, and rail transportation relationships. (D.I. 177 at 3-5, 7-8) With respect to inventory, Defendants contend that Plaintiffs used a different inventory amount to calculate the purchase price than the one provided by Defendants. (D.I. 136 at 16) However, in support of this statement, Defendants cite to Mr. Hajas' Rule 30(b)(6) testimony, in which Mr. Hajas states "I believe at this point in time we

12

were relying on the information Ryan Gilbertson provided us." (*Id.* at 16; D.I. 163, Ex. AH at 68:17-69:5)

Additionally, Plaintiffs have offered record evidence of their due diligence efforts sufficient to create a genuine dispute of material fact. (D.I. 152, Ex. 3 at 87:9-89:17, Ex. 4 at 186:9-187:9, Ex. 21; Ex. 25; D.I. 156, Ex. B; D.I. 183, Ex. 10) The record shows that Plaintiffs' diligence included in-person meetings, phone calls, text messages, and emails, in which Plaintiffs requested and received the Company's 2017 audited financials, balance sheets, monthly and quarterly financials, and several contracts. (*Id.*) Therefore, the court recommends denying Defendants' motion for summary judgment on Count II because material issues of fact exist as to whether Defendants misrepresented or failed to disclose information on which Plaintiffs justifiably relied.

### iii. Breach of Contract, Count III, Against Defendants Gilbertson Trust and Total Depth

Defendants seek summary judgment as to Defendants Gilbertson Trust and Total Depth on the breach of contract claim, contending that Plaintiffs suffered no cognizable loss from any alleged misrepresentation by Gilbertson Trust and Total Depth. (D.I. 136 at 20) Defendants argue in a single conclusory paragraph in their brief that Plaintiffs failed to redeem the class B shares despite their control of the company and access to funds enabling them to do so. (*Id.*)

Plaintiffs dispute that they could have avoided any contractual damages had they redeemed the class B shares. (D.I. 181 at 19-20; D.I. 182, Ex. 8 at 200:1-10, Ex. 43 at § 6.3; D.I. 183, Ex. 42; D.I. 184 at ¶¶ 9-10) Plaintiffs rely on the same document in the record as the Defendants, an email from Mr. Gilbertson to Mr. Hajas in which Mr. Hajas disputes there is sufficient equity to redeem class B shares and believes the board would not approve a redemption. (D.I. 181 at 19-20; D.I. 136 at 20; D.I. 153, Ex. Z) Thus, Plaintiffs raise a material

13

factual dispute regarding their ability to redeem the shares. Moreover, a material dispute of fact exists concerning whether Defendants are jointly and severally liable for breaching contractual representations and whether such representations were collectively made. (D.I. 181 at 20; D.I. 156, Ex. A) Defendants fail to address the material facts or view them in a light favorably to Plaintiffs. (D.I. 136 at 20; D.I. 188 at 8-10) Therefore, the court recommends denying Defendants' motion for summary judgment as to Count III.

### b. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs move for summary judgment against all Defendants on their breach of contract claim at Count III, seeking determination that Defendants breached the Agreement by failing to disclose six material contracts. (D.I. 149) According to Plaintiffs, the Agreement contained three representations that all material contracts entered by the Company and its related entities had been disclosed: (1) "Schedule 2.15 lists each material contract to which any Company Entity is a party or by which any of their respective assets are bound…" (D.I. 156, Ex. A at §§ 2.9, 2.15); (2) "Seller has delivered to Purchaser a true, correct and complete copy of each Major Contract" with "Major Contract" defined as any contract "listed or required to be listed" on Schedule 2.15 (*Id.*); and (3) "no Company Entity had any material obligation, contingent liability, liability for taxes or long-term lease obligation which is not reflected in such Financial Statements, or in the notes thereto" and that, "Since December 31, 2017, and other than in the ordinary course of business, there has not been…any…change or effect that, individually or in the aggregate: …(b) has had or would reasonably be expected to have a material adverse effect on the Company Entities' respective business, condition (financial or otherwise), results of operations, assets or liabilities." (*Id.* at §§ 2.7(a), 2.8)

Plaintiffs maintain that the six contracts at issue were in effect as of the Agreement, but were not disclosed or supplied to Plaintiffs until after close and were not described in the 2017 audited financial statements. (D.I. 149 at 8) Plaintiffs contend that the materiality of these contracts is undisputed and that the only remaining issue for the court is whether Defendants' failure to disclose is a breach of the Agreement. (*Id.*)

According to Plaintiffs, the six contracts at issue are as follows:

(1) Chetek Express (D.I. 154, Ex. 12-13): The Company entered hauling contracts with Chetek Express on June 1, 2017 and May 14, 2018. (D.I. 149 at 4) The June 2017 contract contains non-standard monthly minimum hauling requirements and penalties for shortfalls, while the May 2018 contract extended the term through October 2022 and doubled the monthly minimums for the last 3.5 years. (*Id.* at 4-5) Plaintiffs claim the May 2018 contract contains indica of self-dealing because Mr. Gilbertson was a partial owner of Chetek Express through his entity Wildcat Ranch LLC, the contract was negotiated between two cousins of Mr. Gilbertson on behalf of Chetek Express, and Chetek Express was owned by Mr. Gilbertson's cousin, Chris Johnson, who is also the trust protector for the Gilbertson Trust Defendant. (*Id.* at 17)

(2) Continental Intermodal Group LP ("CIG") (D.I. 152, Ex. 14): The Company entered a transloading contract with CIG on February 1, 2017 that required it to pay at least $120,000 per month for transloading services for approximately two years, had a 100% penalty for any shortfall, and subjected it to demurrage and storage fees. (D.I. 149 at 5-6)

(3) RJR Trucking, LLC (D.I. 152, Ex. 16): The Company entered a transloading contract with RJR Trucking on September 10, 2018, whereby it agreed to "pay a minimum monthly fee of $60,000, regardless of whether it delivers any Product to the Facilities" for a twelve-month term with a 100% penalty for any shortfall. (D.I. 149 at 6)

(4) Mascoutin Heights Leasing Co. LLC ("Mascoutin") (D.I. 152, Ex. 15): The Company entered a contract with Mascoutin on February 17, 2017 for the "true lease" of rail cars for a minimum of three years. (D.I. 149 at 6) The contract contained monthly fees, mileage fees, and required the Company to bear the cost to return cars after use. (*Id.*)

15

 (5) SMBC Rail Services LLC ("SMBC") (D.I. 152, Ex. 19-20): The Company entered a contract with SMBC on April 12, 2017 for the lease of rail cars that resulted in costs exceeding $200,000 and an obligation to pay for insurance and repairs to the railcars the Company leased. (D.I. 149 at 7)

 (6) Sioux Creek Silica ("SCS") (D.I. 152, Ex. 17-18): The Company entered a contract with SCS in October 2017, in which it agreed to purchase 250,000 tons of sand from the competitor. (D.I. 149 at 7) In April 2018, the Company exercised an option to purchase an additional 250,000 tons. (*Id.*)

 Plaintiffs assert that a contract is material for purposes of Section 2.15 if the failure to disclose it would affect the decision-making process of purchasing the equity. (D.I. 149 at 12-13; D.I. 191 at 1) Plaintiffs conclude that all six undisclosed contracts are material because the dollar value of the potential liability was considerable in comparison to other liabilities that were disclosed, the undisclosed contracts were material in size compared to anticipated EBITDA, and the contracts subjected the Company to minimum expenditures over a future period. (D.I. 149 at 15-19) In support, Plaintiffs note that the Company's auditor, Andrea Addo, found that the contracts were material. (*Id.*) Lastly, Plaintiffs argue that the undisclosed contracts factor into the EBITDA calculation, thus having a direct effect on the price of the purchased equity and rendering the contracts material. (*Id.* at 19-20)

 In response, Defendants argue that summary judgment is inappropriate because the phrase "material contract" is undefined in the Agreement, and the materiality of the contracts is disputed. (D.I. 177 at 2, 7-14) Defendants assert that additional disputes exist as to whether Defendants disclosed the contracts or were required to list them on Schedule 2.15 due to Plaintiffs' knowledge of the trucking, transloading, and rail transportation relationships. (*Id.* at 3-5) Further, Defendants argue that Plaintiffs were not damaged by the absence of any of the contracts because any losses were a *de minimus* percentage of revenue. (*Id.* at 8, 14-19) Lastly, Defendants allege that Plaintiffs waived, ratified, or should be estopped from asserting their

16

breach of contract claim because they knew the Company had done business in the past with vendors not included on Schedule 2.15. (*Id.* at 19-20)

The court recommends denying Plaintiffs' motion for summary judgment because viewing the facts in the light most favorable to Defendants, there are genuine issues of material fact regarding the materiality of the six contracts. The Agreement does not define "material," and the parties dispute how it should be defined. (D.I. 156, Ex. A; D.I. 177 at 2, 7-14; D.I. 149 at 8) "For information to be material, there must be a 'substantial likelihood' that the nonpublic fact 'would have assumed actual significance in the deliberations' of a person deciding whether to buy, sell, vote, or tender stock. In other words, the nonpublic information must be of a magnitude that it would, upon disclosure, have 'significantly altered the 'total mix' of information in the marketplace.'" *In re Oracle Corp.*, 867 A.2d 904, 934 (Del. Ch. 2004) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)); *See Silverberg on Behalf of Dendreon Corp. v. Gold*, 2013 WL 6859282, at *10-11 (Del Ch. Dec. 31, 2013). The assessments of materiality "are peculiarly ones for the trier of fact." *TSC Indus.*, 426 U.S. at 450. As such, summary judgment as to the determination of materiality is only appropriate if the omissions are "so obviously important to an investor, that reasonable minds cannot differ on the question of materiality." *Id.* (citing *Johns Hopkins Univ. v. Hutton*, 422 F.2d 1124, 1129 (4th Cir. 1970)); *See also Cede & Co. v. Technicolor, Inc.*, 636 A.2d 956, 957 (Del. 1994); *See also In re Oracle Corp.*, 867 A.2d at 938.

Although, under Delaware law, "interpretation of contractual language…is a question of law," the court cannot at summary judgment impermissibly engage in credibility determinations on the question of materiality. *O'Brien v. Progressive Northern Ins. Co.*, 785 A.2d 281, 286 (Del. 2001); *See Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, C.A. No. 09-

598-LPS, 2011 WL 4351600, at *1 (D. Del. Sept. 16, 2011) (noting that the court in deciding a motion for summary judgment "should not make credibility determinations or weigh the evidence") (internal citation omitted); *See also Cede & Co.*, 636 A.2d at 957 ("we must defer to the factfinder on a mixed question of fact and law, as to which reasonable minds may differ on the question of materiality"). Therefore, the court recommends denying Plaintiffs' motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, the court recommends DENYING Defendants' motion for partial summary judgment (D.I. 135) and DENYING Plaintiffs' motion for partial summary judgment (D.I. 148).

Given that the court has relied upon material that technically remains under seal, the court is releasing this Report and Recommendation under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Report and Recommendation should be redacted, the parties shall jointly submit a proposed redacted version by no later than **February 7, 2022**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within thirty (30) days of the date the Report and Recommendation issued.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: January 31, 2022

Sherry R. Fallon
United States Magistrate Judge