IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APEX FINANCIAL OPTIONS, LLC and GOPHER FINANCIAL, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> RYAN GILBERTSON, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) )   Civil Action No. 19-046-WCB-SRF |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the court in this breach of contract and fraud action is Plaintiffs' Apex Financial Options, LLC ("Apex") and Gopher Financial, LLC ("Gopher") (collectively, "Plaintiffs") motion to exclude the opinions of Defendants' rebuttal expert, Wayne Brown ("Mr. Brown"). (D.I. 142)[1] For the following reasons, Plaintiffs' motion to exclude is GRANTED.

### II. BACKGROUND

#### a. Procedural History

Plaintiffs initiated this action on January 8, 2019, when they filed the original complaint against Ryan Gilbertson ("Mr. Gilbertson"), RRG Family Capital LLC, Ryan Gilbertson Family 2012 Irrevocable Trust, and Total Depth Foundation, Inc. (collectively, "Defendants"), asserting securities fraud, common law fraud, and breach of contract claims, and seeking a declaratory judgment and interpleader, all arising from an Equity Purchase Agreement (the "Agreement") the parties entered on October 17, 2018. (D.I. 1) Before any defendant filed a responsive

---

[1] The briefing for the pending motion is as follows: Plaintiffs' opening brief (D.I. 143), Defendants' answering brief (D.I. 180), and Plaintiffs' reply brief (D.I. 190).

pleading, Plaintiffs filed a First Amended Complaint (the "FAC") on April 8, 2019, realleging the same causes of action as the original complaint and adding the United States of America as a defendant.[2] (D.I. 3)

On September 29, 2020, Defendants filed a partial motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), seeking dismissal of the securities fraud and common law fraud claims. (D.I. 58) Shortly after briefing was completed, Plaintiffs filed a motion for leave to file a Second Amended Complaint (the "SAC"). (D.I. 85) Therefore, the court denied as moot Defendants' motion for partial judgment on the pleadings. (D.I. 109; D.I. 133) On April 13, 2021, Plaintiffs filed a Second Amended Complaint (the "SAC"), providing additional facts to support their existing claims, as well as requests for punitive and rescissory damages. (D.I. 111)

On May 21, 2021, Plaintiffs served on Defendants the opening expert reports of Dr. Timothy Nantell ("Dr. Nantell"), Shane Dore ("Mr. Dore"), and Seth Fliegler. (D.I. 126) On July 16, 2021, Defendants served on Plaintiffs the rebuttal expert report of Mr. Brown. (D.I. 127) On August 12, 2021, Plaintiffs served on Defendants the reply expert reports of Dr. Nantell and Mr. Dore. (D.I. 131) On September 17, 2021, the parties filed cross-motions for partial summary judgment. (D.I. 135; D.I. 148) Plaintiffs also filed this *Daubert* motion to exclude Mr. Brown's expert opinions. (D.I. 142)

### b. Facts

This action involves allegations of breach of contract and fraud arising from the parties' October 17, 2018 Equity Purchase Agreement. (D.I. 111) Plaintiffs purchased Defendants' equity interest in Northern Capital Partners I, LP; Northern Capital Partners I, GP, LLC;

---

[2] The United States of America was dismissed with prejudice from the case on December 2, 2019, pursuant to a stipulation of dismissal. (D.I. 31)

Northern Capital Group LLC; NI Sand Holding, LLC; and NIS Investment Holding, LLC (collectively, the "Company"). (*Id.* at ¶¶ 2, 4-5) The parties agreed upon a purchase price of $11.1 million. (D.I. 156, Ex. A at 2-3; D.I. 160, Ex. AM at ¶ 25; D.I. 143 at 4) To establish the purchase price for the transaction, Plaintiffs used an EBITDA[3] Multiple Framework as follows:

> Purchase Price = (EBITDA x Multiplier) + Inventory + Other Assets – Liabilities

Shortly after the Agreement was executed, Plaintiffs claim that they purchased the equity at "a grossly inflated price" due to Defendants' numerous material misrepresentations about the Company. (D.I. 156 at ¶¶ 4-5; D.I. 111 at ¶¶ 6, 42, 60) Specifically, Plaintiffs claim that Defendants overstated inventory, omitted employee bonuses and salary increases, understated liabilities, and misrepresented the collectability of accounts receivable. (D.I. 143 at 4-5) Plaintiffs also claim that they discovered six undisclosed, material contracts that subjected the Company to monthly minimum payments, penalties for shortfalls, future commitments, and other fees and obligations. (*Id.*) Defendants maintain that Plaintiffs suffered no damages or, alternatively, that any alleged inflation of the purchase price calculation resulted from Plaintiffs' lack of due diligence and use of the nonstandard EBITDA Multiple Framework. (D.I. 180 at 10-12)

## III. LEGAL STANDARD

Federal Rule of Evidence 702 sets out the requirements for expert witness testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will

---

[3] According to Mr. Brown, "EBITDA" stands for Earnings Before Interest, Taxes, Depreciation, and Amortization and "is a measure of cash flow before paying interest on debt." (D.I. 160, Ex. AM at ¶ 12) According to Dr. Nantell, EBITDA is a "widely used term and concept in financial analysis, standing for earnings before (the payment of) interest and taxes, (plus the non-cash expense of) depreciation and amortization." (D.I. 158, Ex. AI at ¶¶ 70, n. 99)

> help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The trial court has the "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 597 (1993).

The Third Circuit has explained:

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that "a broad range of knowledge, skills, and training qualify an expert." Secondly, the testimony must be reliable; it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation;' the expert must have 'good grounds' for his o[r] her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. The Supreme Court explained in *Daubert* that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."
>
> By means of a so-called "*Daubert* hearing," the district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury.

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003) (footnote and internal citations omitted).[4]

---

[4] The Court of Appeals wrote under an earlier version of Rule 702, but the subsequent amendments to it were not intended to make any substantive change.

## IV. DISCUSSION

Plaintiffs seek to exclude Mr. Brown's testimony on three grounds: (1) his opinions regarding Plaintiffs' due diligence are outside the scope of his expertise and lack an adequate basis; (2) his opinions will not assist the trier of fact because he did not perform any valuation, has no opinion on the correct damages amount, and any opinions regarding alternative valuation methods are irrelevant; and (3) his opinions rely on incorrect factual assumptions and mere *ipse dixit* assertions and fail to apply any reliable methodology. (D.I. 143)

### a. Scope

Plaintiffs argue that opinions relating to liability or the adequacy of Plaintiffs' due diligence are outside the scope of Mr. Brown's assignment and qualifications as a valuation and damages expert. (D.I. 143 at 8-10) Plaintiffs assert that Mr. Brown failed to conduct any independent investigation of Plaintiffs' due diligence and, instead, based his opinions only on his review of Dr. Nantell's report and the documents it referenced, which do not purport to offer a comprehensive list of documents considered or analysis performed. (*Id.* at 9-10)

In response, Defendants assert that Mr. Brown's opinions on valuation due diligence are within the proper scope for expert testimony and are grounded by sufficient evidence in the record. (D.I. 180 at 7-8) Defendants argue that Mr. Brown's opinions do not extend to due diligence overall, but rather only to the nature and extent of valuation due diligence commonly performed by buyers, Plaintiffs' valuation due diligence in this case as reflected by the record, and the information available to Plaintiffs to conduct proper valuation due diligence. (*Id.*)

The parties agree that Mr. Brown will not offer an opinion on "overall" or "general" due diligence. (D.I. 143 at 9; D.I. 180 at 7) By Mr. Brown's own description, his report is intended

5

to address valuation and damages, not liability. (D.I. 152, Ex. 37 at 83:2-4; 83:15-85:1; 116:13-16) Brown offers the opinion:

> The damages constructed in the Nantell Report ignore that the Plaintiffs agreed to pay a specific purchase price derived from their own valuation. Plaintiffs—despite their sophistication—chose to forego traditional due diligence and traditional valuation approaches in favor of a homemade formula…They had all the financial information in their possession to normalize the historical data, and they didn't.

(D.I. 160, Ex. AM at ¶ 51)

Mr. Brown states in his conclusion that he has "shown that the EBITDA Multiple Framework does not capture the available information for valuation and that it produces inaccurate results compared with standard methodology. It is not an accurate, valid valuation methodology to use for damage analysis." (*Id.* at ¶ 53) Mr. Brown also opines on numerous occasions that Plaintiffs had "sufficient information to prepare a valuation using standard methodology." (*Id.* at ¶¶ 15, 20, 38, 42(b), 44, 50) Notably, Mr. Brown does not identify in his report what he refers to as "sufficient information," other than stating:

> The basis for my opinions includes the combination of my professional experience in the valuation field, my related qualifications, and the contents of this report. My analysis, comments and opinions describe what was not considered, ignored or missed in the Nantell Report from the perspective of describing how I would have performed the valuation of the Equity Sale based on the available information.

(*Id.* at ¶ 18)

The court finds that Mr. Brown's opinion on the ultimate issue of liability and the adequacy of the Plaintiffs' due diligence should be excluded and the issue reserved for the trier of fact. *See Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) ("an expert witness is prohibited from rendering a legal opinion" because "[s]uch testimony…would usurp the District Court's pivotal role in explaining the law"); *See also Krys v. Aaron*, 112 F. Supp. 3d

181, 193 (D. N.J. 2015) (internal citations omitted) (a "qualified expert… may not merely instruct the jury on the result to reach based upon a party's specific conduct or actions"); *See also Wolfe v. McNeil-PPC, Inc.*, 881 F. Supp. 2d 650, 661-62 (E.D. Pa. 2012) (internal quotations omitted) ("to the extent [an expert] plans to testify that [a party] behaved negligently in the conduct of its business, such testimony constitutes an improper legal opinion").

### b. Helpfulness to the Trier of Fact

Plaintiffs argue that Mr. Brown's opinions unhelpfully and irrelevantly focus on his contention that Plaintiffs should have used a more standard methodology rather than the mutually agreed-upon EBITDA Multiple Framework.[5] (D.I. 143 at 11-13) Plaintiffs assert that the data and information underlying any final valuation is at issue, not the methodology itself. (*Id.* at 13) Plaintiffs then highlight that Mr. Brown does not offer an opinion on the correct damages amount because his report expressly refuses to assume liability. (*Id.* at 13-14) Accordingly, Plaintiffs contend that the "fit requirement" of Rule 702 is not met because Mr. Brown's opinions fail to help the fact finder understand the evidence or determine a fact in issue. (*Id.* at 10-11)

In response, Defendants argue that Mr. Brown's opinions directly address the disputed issues of damages causation and the reliability and credibility of Plaintiffs' damages evidence. (D.I. 180 at 9-12) Mr. Brown concluded that Plaintiffs did not suffer any damages. (*Id.* at 12; D.I. 160, Ex. AM at ¶¶ 49-55) Alternatively, Mr. Brown asserts that Plaintiffs had sufficient financial information to prepare a valuation using standard methodology, but that Plaintiffs'

---

[5] Plaintiffs argue that the parties agreed to use the EBITDA Multiple Framework and that it was proposed by Mr. Gilbertson and accepted by Plaintiffs. (D.I. 143 at 12) Defendants, however, argue that there was no such agreement, but that Mr. Gilbertson simply proposed a similar valuation methodology in early Agreement discussions. (D.I. 180 at 10)

7

reliance on, and application of, the nonstandard EBITDA Multiple Framework affected the purchase price calculation. (D.I. 180 at 10-12)

An expert's testimony is helpful if it "will aid the jury in resolving a factual dispute." *M2M Sols. LLC v. Sierra Wireless Am., Inc.*, C.A. No. 14-1102-RGA-SRF, 2020 WL 7767639, at *16 (D. Del. Dec. 4, 2020) (citing *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009)). The Third Circuit has emphasized that the expert's analysis must "fit" his or her conclusions to the case at hand. *In re Paoli*, 35 F.3d at 745. This requirement "goes primarily to relevance" and "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92.

Mr. Brown criticizes Dr. Nantell's use of the EBITDA Multiple Framework as a nonstandard methodology. (D.I. 160, Ex. AM at ¶¶ 24-29) Mr. Brown does not list a valuation methodology he contends Plaintiffs should have used, but cites to two secondary sources – Internal Revenue Service Revenue Ruling 59-60 and the American Institute of Certified Public Accountants ("AICPA"), State on Standard for Valuations Services ("SSVS") No. 1. – that Defendants contend provide the three most common valuation approaches. (*Id.* at ¶ 23; D.I. 180 at 14-15) Mr. Brown also claims that "relevant references about the standard valuation methodology that should have been performed can be found" in both sources and that valuations commonly summarize Revenue Ruling 59-60 into "eight factors that should be considered with standard valuation methodology." (D.I. 160, Ex. AM at ¶ 30)

Mr. Brown's opinion does not assist the fact finder because he never connects an alternative methodology to the facts of the case to explain how it would alter the outcome and compare with Dr. Nantell's valuation opinion. Mr. Brown instead offers the opinion:

> The main valuation problem here is the use of the rough EBITDA Multiple Framework, and not a lack of information. There was sufficient

8

> information to prepare a valuation using standard methodology. Plaintiffs did not need to rely on the EBITDA Multiple Framework or the disputed information to derive a valuation.

(D.I. 160, Ex. AM at ¶ 50) Thus, Mr. Brown's opinion should be excluded because "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743 (3d Cir. 1994) (citing *Daubert*, 509 U.S. at 591-92); *See Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 81 (3d Cir. 2017) (quotations and citation omitted) ("The fit requirement ensures that the evidence or testimony [helps] the trier of fact understand the evidence or to determine a fact in issue").

### c. Reliability[6]

Plaintiffs argue that Mr. Brown's damages opinions are unreliable because they rely on incorrect factual assumptions and mere *ipse dixit* assertions and are not based on any identified methodology. (D.I. 143 at 15-19) According to Plaintiffs, Mr. Brown does not define or identify a specific valuation methodology as the standard. (*Id.*) Further, Plaintiffs argue that several exhibits attached to Mr. Brown's report that purport to show a comparison between audited and unaudited financial data contain no description, key, or citations to any document in the factual record. (*Id.*) During deposition, Mr. Brown was also unable to identify how he derived the information in one exhibit. (*Id.* at 16-17)

Plaintiffs further argue that Mr. Brown's reliance on data created after the close of the transaction undermines the reliability of his opinion. (*Id.* at 17) Specifically, Plaintiffs note that Mr. Brown analyzes and discusses information contained in the NIS 2018 audited financial

---

[6] Plaintiffs do not dispute that Mr. Brown's professional experience qualifies him to be an expert witness on valuation as a general matter. (D.I. 190 at 8) However, Plaintiffs claim that valuation is not at issue, but instead the misrepresentation of data and information underlying the final valuation. (*Id.*)

9

statements ("2018 Audited Financials") completed nearly six months after the transaction. (*Id.*) He also attaches as an exhibit a Bloomberg article titled "Frack Sand Producer Plunges as Permian Drilling Slows Down" ("Bloomberg Article") that is dated after the close of the transaction. (*Id.* at 17-18) Plaintiffs contend that, despite Mr. Brown's representations to the contrary, neither of these sources reflect information known to Plaintiffs at the time of the Agreement.[7]

In response, Defendants argue that Mr. Brown's opinions are based on his cited secondary sources, "professional experience in the valuation field, [] related qualifications, and the contents of [his] report." (D.I. 180 at 13) According to Defendants, these sources, along with the exhibits attached to Mr. Brown's report, support Mr. Brown's conclusion that neither Plaintiffs nor Dr. Nantell used standard valuation methodology. (*Id.* at 16) Further, Defendants contend that Mr. Brown's report makes clear the tangential nature of both 2018 Audited Financials and the Bloomberg Article. (*Id.* at 17) Defendants assert that Mr. Brown cites to the 2018 Audited Financials for the proposition that Plaintiffs should have normalized EBITDA in their valuation instead of using a forecasted EBITDA. (*Id.*) Similarly, Defendants assert that Mr. Brown cites the Bloomberg Article not as evidence of what Plaintiffs had access to during due diligence, but for the proposition that Dr. Nantell's EBITDA valuation did not consider the industry trends or conditions. (*Id.*)

The court finds that Mr. Brown's opinions do not meet the threshold reliability standard of Rule 702 and accordingly, the court grants Plaintiffs' motion to exclude on this basis. "[A]n

---

[7] To the extent the parties disagree over whether Dr. Nantell or Mr. Dore included in their expert reports "retrospective" or "retroactive" analysis of data created after the close of the transaction, the Rule 702 admissibility of Plaintiffs' experts' opinions is not before the court. (*See* D.I. 143 at 18-19; D.I. 180 at 17-18)

expert may introduce new methods of analysis in a rebuttal report if they are offered to contradict or rebut another party's expert." *In re Genetically Modified Rice Litig.*, 2010 WL 4483993, at *3 (E.D. Mo. Nov. 1, 2010); *See Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D. N.J. 2004). Mr. Brown's report fails to meet this requirement. Mr. Brown offers the opinion:

> Because the amount the Plaintiffs were willing to pay and Defendants were willing to accept was $11,115,247.70, the appropriate valuation of NIS at the time of the transaction is $11,115,247.70. Neither party was under any compulsion to buy or sell, and both parties had reasonable knowledge of relevant facts. Therefore, the transaction did in fact take place.

(D.I. 160, Ex. AM at ¶ 49) This is not an expert opinion of any sort. It is *ipse dixit* without any foundation and is nothing more than a recitation of Defendants' damages argument. (*Id.*)

In evaluating Rule 702 admissibility, the "ultimate touchtone is helpfulness to the trier of fact, *and with regard to reliability*, helpfulness turns on whether the expert's 'technique or principle [is] sufficiently reliable so that it will aid the jury in reaching accurate results.'" *Tridon Indus., Inc. v. Willis Chevrolet, Inc.*, C.A. No. 12-1070-LPS, 2014 WL 1338678, at *3 (D. Del. April 1, 2014) (emphasis added) (quoting *In re Paoli*, 35 F.3d at 744). Mr. Brown's opinions regarding proper valuation are not grounded in technical or specialized knowledge, and ultimately fail to aid the fact finder in reaching accurate results. Moreover, the opinions fail to satisfy Rule 702(d) as there is no application of any valuation method to the facts of the case. *See* Fed. R. Evid. 702(d). Therefore, the court grants Plaintiffs' motion to exclude on this basis.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to exclude the opinions of Defendants' rebuttal expert is GRANTED. (D.I. 142)

Given that the court has relied upon material that technically remains under seal, the court is releasing this Report and Recommendation under seal, pending review by the parties. In

the unlikely event that the parties believe that certain material in this Report and Recommendation should be redacted, the parties shall jointly submit a proposed redacted version by no later than **February 7, 2022**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within thirty (30) days of the date the Report and Recommendation issued.

This Memorandum Opinion is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Opinion. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each. The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: January 31, 2022

Sherry R. Fallon
United States Magistrate Judge