**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| APEX FINANCIAL OPTIONS, LLC AND | § | |
| GOPHER FINANCIAL, LLC, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No. 19-0046-WCB-SRF |
| | § | |
| RYAN GILBERTSON, RRG FAMILY | § | |
| CAPITAL LLC, RYAN GILBERTSON | § | |
| FAMILY 2012 IRREVOCABLE TRUST, | § | |
| AND TOTAL DEPTH FOUNDATION, INC., | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

The defendants have filed objections to Magistrate Judge Fallon's Memorandum Opinion excluding the opinions of the defendants' rebuttal expert witness, Wayne Brown.  Dkt. No. 240.  I will overrule the defendants' objections to Judge Fallon's order in part and postpone ruling on Judge Fallon's order in part.

### 1. Background

The dispute in this case involves the purchase of a business.  The defendants sold their interest in several related entities to the plaintiffs.  The business that was transferred entailed the mining and selling of sand.  The plaintiffs allege that after the purchase they discovered that the business was not worth what they paid for it.  They then filed this action, alleging that the defendants had engaged in breach of contract, securities fraud, and common law fraud by misrepresentation and failure to disclose material information that affected the apparent value of the business.

1

The plaintiffs intend to call Dr. Timothy Nantell as their damages expert at trial.  The defendants intend to call Mr. Brown as their rebuttal expert.  During pretrial proceedings, the defendants served a copy of Mr. Brown's report on the plaintiffs.  The report sets forth the issues on which Mr. Brown intends to testify.  In the report, Mr. Brown stated that his testimony would be directed to "the substance of the valuation analysis used in calculating damages."  Dkt. No. 160, Exh. AM ("Brown Report") at ¶ 11.

The plaintiffs moved to exclude Mr. Brown's testimony in its entirety, and the motion was assigned to Judge Fallon for decision.  In their motion, the plaintiffs argued that Mr. Brown's qualifications were limited to valuation and damages, but that in his report Mr. Brown set forth his opinions relating to liability and the adequacy of the plaintiff's due diligence.  Those subjects, the plaintiffs argued, were outside the proper scope of Mr. Brown's expert testimony.

In his report, Mr. Brown stated that the plaintiffs chose to forgo "traditional due diligence and traditional valuation approaches in favor of a homemade formula. . . .  They had all the financial information in their possession to normalize the historical data, and they didn't."  *Id.* at ¶ 51.  In particular, Mr. Brown criticized the plaintiffs for their reliance on a valuation method known as the "EBITDA Multiple Framework," which he characterized as not being "an accurate, valid methodology to use for damage analysis."  *Id*. at ¶ 53.  That was true, Mr. Brown asserted, even though the plaintiffs had "sufficient information to prepare a valuation using standard methodology."  *Id*. at ¶¶ 15, 20, 38, 42(b), 44, 50.

Judge Fallon excluded Mr. Brown's testimony regarding the plaintiffs' reliance on the EBITDA valuation method and his opinion that the plaintiffs had sufficient information to use a more standard valuation method.  As to those issues, Judge Fallon found that Mr. Brown's report was addressed to the ultimate issue of liability and the adequacy of the plaintiffs' due diligence,

which went beyond the scope of his expertise and his role as an expert on valuation methodology. Dkt. No. 235 at 5–7.  In addition, Judge Fallon found that Mr. Brown's conclusions that the plaintiffs had not suffered any damages and that they had sufficient financial information to prepare a valuation using standard methodology would not assist the fact finder.  That was because Mr. Brown "never connects an alternative methodology to the facts of the case to explain how it would alter the outcome and compare with Dr. Nantell's valuation opinion." *Id.* at 8.  Noting the plaintiffs' contentions that Mr. Brown relied on incorrect factual assumptions and information developed after the close of the transaction, Judge Fallon also found that Mr. Brown's damages opinions "do not meet the threshold reliability standard of Rule 702 [of the Federal Rules of Evidence]."  *Id.* at 10.  Finally, Judge Fallon noted that Mr. Brown had stated his opinion that because the amount the plaintiffs were willing to pay and the defendants were willing to accept was $11,115,247.70, that was the appropriate valuation of the business, since "[n]either party was under any compulsion to buy or sell, and both parties had reasonable knowledge of relevant facts." Brown Report at ¶ 49.  That remark, Judge Fallon observed, "is not an expert opinion of any sort. It is *ipse dixit* without any foundation and nothing more than a recitation of Defendants' damages argument."  Dkt. No. 235 at 11.

## 2.  Discussion

Focusing on Mr. Brown's opinions regarding standard methods for valuing a business, the defendants object to Judge Fallon's order excluding Mr. Brown's testimony in its entirety.  The problem with the defendants' position is that Mr. Brown's opinions include significantly more than just discussion of standard methods of valuation and criticism of the EBITDA Multiple Framework.  For example, as Judge Fallon noted, Mr. Brown at one point in his report observed that the value of the business was what the parties agreed to pay for it.  The defendants in effect

have acknowledged that opinion to be improper and have stated that they do not object to striking that opinion from Mr. Brown's report.  Dkt. No. 240 at 6.  As Judge Fallon pointed out, however, there is considerably more than that in Mr. Brown's report that strays beyond his field of expertise.  Judge Fallon correctly ruled that those portions of his report must be excluded, as indicated below.

a.  To begin with, Mr. Brown's qualifications as an expert on valuation methods do not justify his expression of opinions as to issues such as the adequacy of the plaintiffs' due diligence in investigating the value of the business before the transaction.  Dkt. No. 240 at 7.  While Mr. Brown's report does not express a view on the issue of liability as such, various portions of his report indicate that Mr. Brown disagreed with Dr. Nantell's conclusions as to the amount of the damages suffered by the plaintiffs.  In particular, Mr. Brown's report states that the plaintiffs had "sufficient information to prepare a valuation using standard methodology," Brown Report at ¶ 50, that they "chose to forego traditional due diligence and traditional valuation approaches in favor of a homemade formula," *id.* at ¶ 51, and that they "appear to have conducted limited market and financial analysis and disregarded financial records and reports . . . during their limited due diligence," *id*.  Likewise, Mr. Brown found that the plaintiffs "had access to the information required to calculate a historical, normalized EBITDA during their due diligence process; however, they do not appear to have used this information." *Id.* ¶ 37.  And at another point in his report, Mr. Brown stated that the plaintiffs chose to use the EBITDA Multiple Framework "and implemented it without performing valuation due diligence, assuming any associated risks and limitations." *Id.* at ¶ 43.

In his report, Mr. Brown expressed his view that the plaintiffs' "failure to perform their own valuation prior to executing the Equity Purchase Agreement isn't the byproduct of insufficient financial information, rather their own choice not to do due diligence." *Id.* at ¶ 15.  That statement,

and similar ones elsewhere in Mr. Brown's report, are likewise outside his expertise and knowledge.  In order to make such a finding, he would have had to conclude that the plaintiffs had all the financial information they needed in order to make an accurate assessment of the value of the business they were purchasing.  He could reach such a conclusion only by finding either that the defendants did not conceal material information about the business from the plaintiffs or that the defendants could have obtained that information regardless of any efforts on the part of the defendants to conceal it.  Similarly, Mr. Brown found that there was no evidence that the plaintiffs relied on a particular valuation of inventory found in one of the spreadsheets relied on by Dr. Nantell.  *Id.* at ¶ 35(c)(i).

All of those conclusions are outside the scope of Mr. Brown's expertise, as Judge Fallon correctly concluded.  To the extent that the defendants challenge Judge Fallon's ruling excluding Mr. Brown on those points, I sustain her ruling.

**b.**  Portions of Mr. Brown's report are more specifically directed to his criticism of the plaintiffs' reliance on the EBITDA valuation method, which Mr. Brown characterizes as a nonstandard methodology for valuation.  *See id.* at ¶¶ 24–29.  Whether Mr. Brown's testimony based on those portions of his report should be excluded presents a closer question.

The defendants argue that Judge Fallon improperly faulted Mr. Brown for failing to perform a damages analysis.  Because Mr. Brown is a rebuttal expert, the defendants contend, he was not required to offer a competing damages analysis, but was entitled simply to "explain, repel, counteract or disprove evidence of the adverse party."  Dkt. No. 240 at 3–4 (quoting *United States v. Lamoreaux*, 422 F.3d 750, 755 (8th Cir. 2005)).

It is true that as a rebuttal witness it was enough for Mr. Brown to critique Dr. Nantell's analysis; it was not necessary for him to offer an alternative approach.  *See In re Red Rock Servs.*

5

*Co.*, 642 F. App'x 110, 115–16 (3d Cir. 2016); *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006); *Mahaska Bottling Co. v. PepsiCo, Inc.*, 441 F. Supp. 3d 745, 759 (S.D. Iowa 2019); *Aviva Sports, Inc. v. Fingerhut Direct Mktg.*, 829 F. Supp. 2d 802, 834–35 (D. Minn. 2011). To be sure, it would have been more helpful if Mr. Brown had conducted a valuation analysis using a different methodology and had shown how an alternative methodology would have affected the damages calculation, rather than simply criticizing Dr. Nantell's methodology and leaving it at that.  However, the burden of proving damages rests with the plaintiffs, and the defendants' criticism of the plaintiffs' methodology is therefore relevant even in the absence of a substitute for the plaintiff's analysis.  Mr. Brown's testimony criticizing Dr. Nantell's analysis is thus not excludable solely on the ground that he did not conduct a full analysis of his own leading to an alternative calculation of damages.

The defendants also point out that because this case will be tried to the court rather than to a jury, there is less need for the court to police the admission of expert testimony than would be the case if this case were being tried to a jury.  *See, e.g.*, *United States v. Wood*, 741 F.3d 417, 425 (4th Cir. 2013) ("[B]ecause the district court was also the trier of facts, the district court's evidentiary gatekeeping function was relaxed, and the district court was in the best position to decide the proper weight to give the expert opinions."); *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) ("[W]here the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702."); *United States v. Brown*, 415 F.3d 1257, 1268–69 (11th Cir. 2005) (The barriers to the admission of expert testimony "are even more relaxed in a bench trial situation, where the judge is serving as factfinder and we are not concerned about 'dumping a barrage of questionable scientific evidence on a jury.' . . .  There is less need for the

6

gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."); *Deal v. Hamilton Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004) ("The 'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial."); *Alcoa, Inc. v. Alcan Rolled Prods.-Ravenswood LLC*, No. 06-451, 2020 WL 433856, at *3 (D. Del. Jan. 28, 2020) ("[L]ess stringent application of *Daubert* is appropriate in bench trials.); *LG Display Co. v. AU Optronics Corp.*, 265 F.R.D. 189, 195 (D. Del. 2010) ("[C]ourts in this circuit and others have acknowledged that the gatekeeping obligation provided for in *Daubert* is less pressing in the context of a bench trial."); *see generally Harris v. Rivera*, 454 U.S. 339, 346 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."). That is not to say that the *Daubert* analysis has no application in a bench trial. It is simply less critical to pre-screen expert testimony in the bench trial setting, since the court can simply disregard expert evidence that it regards as unreliable, irrelevant, or unhelpful.

As a further consideration bearing on whether I should exclude Mr. Brown's testimony in its entirety at this juncture, the defendants argue that under Third Circuit law, the court should conduct a *Daubert* hearing before excluding an expert witness's opinion. Dkt. No. 240 at 3 n.3 (citing *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 417–18 (3d Cir. 1999)). The Third Circuit has made clear that the *Padillas* case does not set forth a hard and fast rule requiring an evidentiary hearing whenever a party seeks to exclude expert testimony. *See, e.g.*, *Oddi v. Ford Motor Co.*, 234 F.3d 136, 151–55 (3d Cir. 2000). Nonetheless, a court must exercise caution before excluding an expert's testimony in its entirety, and the Third Circuit has made it clear that it is often advisable for the court to conduct some form of hearing before excluding such evidence. *See, e.g.*, *Elcock v. Kmart Corp.*, 233 F.3d 734, 745 (3d Cir. 2000); *In re TMI Litig.*, 199 F.3d 158, 159 (3d Cir. 1999).

Accordingly, I will postpone ruling on the admissibility of those portions of Mr. Brown's testimony that are directed to valuation methodologies. At the time of trial, I will conduct an *in limine* hearing to determine whether to exclude the portions of Mr. Brown's testimony criticizing Dr. Nantell's valuation analysis and describing alternative valuation methodologies. If at that time I conclude that the evidence in question is sufficiently helpful, relevant, and within the scope of Mr. Brown's expertise, I will admit the evidence and then accord it such weight as I conclude it deserves. If the *in limine* hearing does not resolve the question as to the admissibility of particular portions of Mr. Brown's testimony, I can hear his testimony and decide either to exclude it or admit it after the fact based on the full record at the trial. *See Sanofi-Aventis U.S. LLC v. Merck Sharp & Dohme Corp.*, 2018 WL 2422003, at *2 (D. Del. May 29, 2018) ("Though I am presently dubious that Dr. McLean's testing of the Database has produced reliable results relevant to this case, I will be in a better position to judge the reliability of Dr. McLean's testimony on a full record made at trial. While I acknowledge the 'gate-keeper' function of a federal trial judge, it is not so important that it be done pretrial when the trial is a bench trial.")

Therefore, I will affirm Judge Fallon's order excluding those portions of Mr. Brown's expert testimony discussed in part 2.a above, and I will defer ruling on the remainder of Mr. Brown's testimony, discussed in part 2.b until the trial.

Because the plaintiffs' Opening Brief in Support of Motion to Exclude the Opinions of Defendants' Expert Wayne Brown, Dkt. No. 143, was filed under seal, this order is being filed under seal to avoid the risk of inadvertent disclosure of confidential information. Within three days of the issuance of this order, the parties are directed to advise the court by letter whether they wish the order to remain under seal, which portions should remain under seal, and if so, why.

IT IS SO ORDERED.

SIGNED this 1st day of March, 2022.


_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE