IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| APEX FINANCIAL OPTIONS, LLC AND GOPHER FINANCIAL, LLC, § § § § *Plaintiffs*, § § v. § § RYAN GILBERTSON, RRG FAMILY § CAPITAL LLC, RYAN GILBERTSON § FAMILY 2012 IRREVOCABLE TRUST, § AND TOTAL DEPTH FOUNDATION, INC., § § *Defendants*. § § | | Civil Action No. 19-0046-WCB-SRF |

## MEMORANDUM OPINION AND ORDER

On August 18, 2022, I issued findings of fact and conclusions of law in this case. Dkt. No. 281. I found that the defendants had breached the Equity Purchase Agreement ("EPA") between the parties by failing to disclose five material contracts on Schedule 2.15 of that agreement. As a result of the breach, I held that the plaintiffs were entitled to $227,039 in damages plus simple interest on that sum at the rate of 7.75% per annum. *Id.* at 52. In all other respects, I denied the relief sought by the plaintiffs. I entered judgment on September 9, 2022, and directed the parties to move separately if they wished to seek attorneys' fees and costs. Dkt. No. 291. Both sides have now moved for attorneys' fees and costs. Dkt. Nos. 292, 296. For the reasons set forth below, the plaintiffs' motion is DENIED and the defendants' motion is GRANTED IN PART and DENIED IN PART.

### I. Background

This action arose out of a transaction for the purchase of equity interests in several related entities including Northern Industrial Sands, LLC ("NIS"), a company that mined northern white

fracking sand in Wisconsin and sold it to operators of oil wells in the southwestern United States. In the EPA, the plaintiffs agreed to purchase shares of NIS and the related entities from the defendants. Not long after the transaction closed, the market for northern white sand collapsed, and NIS ultimately went into receivership.

At trial, the plaintiffs argued that the defendants breached the EPA in several respects. Specifically, the plaintiffs argued (1) that the defendants failed to disclose six allegedly material NIS contracts that should have been disclosed on Schedule 2.15 of the EPA, (2) that the NIS financial statements that were provided to the plaintiffs prior to the closing significantly overvalued NIS's inventory, and (3) that the NIS financial statements failed to reflect the true value of several of NIS's accounts receivable. The plaintiffs further argued that those misrepresentations and nondisclosures were made with intent to defraud and thus constituted common law fraud under Delaware law and securities fraud under federal law.

In my findings of fact and conclusions of law, I found that the plaintiffs had established that the defendants breached the EPA by failing to disclose five of the six material NIS contracts that the plaintiffs alleged should have been disclosed to them. I also found, however, that the evidence did not show that the company's financial statements were inaccurate in any respect, and I found that the evidence did not establish that the defendants acted with intent to defraud when they failed to disclose the five material contracts on Schedule 2.15 of the EPA. Based on the breach of the contractual obligation to disclose all of NIS's material contracts, I found that the plaintiffs were entitled to a damages award of $227,039. That amount was far less than the approximately $11 million in damages the plaintiffs sought at trial. Both sides have now moved for an award of attorneys' fees and costs.

## II. Discussion

The issues of attorneys' fees and costs deserve somewhat different treatment, so I address them separately below.

### A. Attorneys' Fees

Section 6.7 of the EPA explicitly contemplates an award of attorneys' fees to the prevailing party in any litigation arising out of the agreement to sell interests in NIS and its related entities. As recited in Section 6.7 of the EPA, "in the event that any dispute between the parties with respect to this Agreement should result in a legal proceeding, the non-prevailing party will pay any reasonable attorneys' fees and expenses incurred by the prevailing party in connection with such proceeding." PX001 at § 6.7.

Delaware courts typically treat fee-shifting provisions as embracing an "all-or-nothing" approach, that is, awarding either all of a party's fees or none of those fees, rather than apportioning fees on a claim-by-claim basis. *See, e.g.*, *AB Stable VIII LLC v. Maps Hotels & Resorts One LLC*, No. 2020-0310, 2020 WL 7024929, at *100 (Del. Ch. Nov. 30, 2020) (citing cases); *Brandin v. Gottlieb*, No. CIV. A. 14819, 2000 WL 1005954, at *28 (Del. Ch. July 13, 2000). However, the parties to a contract can elect a claim-by-claim approach by inserting "language in the contract that would authorize the court to exercise discretion to award less than 'all' the prevailing party's fees in a case where the prevailing party had achieved less than a full victory." *Id.* In this case, there is no language in the EPA suggesting that the parties intended for fees to be awarded on a claim-by-claim basis, so I will treat Section 6.7 of the EPA as requiring an all-or-nothing approach. *See Aloha Power Co. v. Regenesis Power, LLC*, No. CV 12697, 2017 WL 6550429, at *5 (Del. Ch. Dec. 22, 2017) (holding that a somewhat similar provision required an all-or-nothing approach).

3

In determining which party should be considered the "prevailing party," Delaware courts apply the "predominance in the litigation" standard. *The Mrs. Fields Brand, Inc. v. Interbake Foods LLC*, No. CV 12201, 2018 WL 300454, at *2 (Del. Ch. Jan. 5, 2018). That standard requires the court to determine which party prevailed "on the case's chief issue." *Id.* (quoting *2009 CAIOLA Fam. Tr. v. PWA, LLC*, No. CV 8028, 2015 WL 6007596, at *33 (Del. Ch. Oct. 14, 2015)).

Although Delaware courts have adopted an all-or-nothing approach in interpreting fee-shifting agreements, they have recognized that in some instances, there is no single "chief issue" in a case. In such instances, when a case presents more than one chief issue and each party has prevailed on one or more of those issues, the courts have held that a fee-shifting agreement does not necessarily entitle either party to a fee award. *See Duncan v. STTCPL, LLC*, No. K16C-12-020, 2020 WL 829374, at *15 (Del. Super. Ct. Feb. 19, 2020); *Mrs. Fields*, 2018 WL 300454, at *3; *AHS N.M. Holdings, Inc. v. Healthsource, Inc.*, No. 2120-N, 2007 WL 431051, at *9 (Del. Ch. Feb. 2, 2007). Where the parties split their success in such circumstances, "the Court may find that neither party prevailed." *Duncan*, 2020 WL 829374, at *15.

There were three chief issues in dispute in this case: (1) whether the defendants breached the EPA by failing disclose certain contracts on Schedule 2.15; (2) whether the defendants breached the EPA by providing inaccurate financial statements to the plaintiffs; and (3) whether the defendants acted with intent to defraud such that they could be liable for either common law fraud or federal securities fraud. By proving that the defendants failed to disclose five material NIS contracts on Schedule 2.15 of the EPA, the plaintiffs prevailed on the first chief issue. However, the plaintiffs did not prove that they were entitled to relief on the second and third chief issues, and the defendants therefore prevailed on those issues.

Both the plaintiffs and the defendants argue that they were the prevailing parties in this case. The defendants argue that they were the prevailing parties because they prevailed on the plaintiffs' fraud claims and on certain of the plaintiffs' contract claims. In support of that contention, the defendants cite three cases in which a party lost on a minor issue but was nevertheless considered to be the prevailing party because it prevailed on a more significant issue. Dkt. No. 293 at 7. In *Senior Housing Capital, LLC v. SHP Senior Housing Fund, LLC*, the court held that the plaintiff prevailed when it proved all aspects of its claims except for one "small issue." No. CIV.A. 4586-CS, 2013 WL 1955012, at *44 (Del. Ch. May 13, 2013). In *Brandin v. Gottlieb*, a party was held to be the prevailing party because she "succeeded on a variety of important claims," even though she was found to have materially breached a contract at issue in the case. 2000 WL 1005954, at *27. And in *GOT I, LLC v. XRT, Inc.*, the plaintiffs prevailed with respect to 51 out of 57 products that were the subject of the parties' contract. 798 F. App'x 505, 511 (11th Cir. 2020) (applying Delaware law). The court of appeals in that case held that the plaintiffs were the prevailing parties in the litigation overall and that reversed the district court's determination that there was no prevailing party in the case. *Id.* The court held that "notwithstanding its minor breach," the plaintiffs had "achieved predominance in the litigation." *Id.*

The problem for the defendants is that their failure to disclose five material contracts on Schedule 2.15 was not a "small issue" or a "minor breach." Much of the evidence at trial was directed to the nature of the six contracts that the plaintiffs alleged were material and not disclosed, and the plaintiffs prevailed with respect to the breach of contract claims relating to five of those six contracts. While the plaintiffs' request for rescissory damages under their fraud allegations substantially exceeded the damages they obtained on their breach of contract claims, the nondisclosure allegations were of central importance to both the fraud claims and the breach of

5

contract claims, and the contract breach claims resulted in an award of substantial compensation.[1] For that reason, the defendants' nondisclosures that were held to constitute breaches of the EPA did not constitute a minor issue in this case.[2] I therefore conclude that the defendants cannot be considered the prevailing parties in this litigation.

For their part, the plaintiffs contend that they were the prevailing parties. They rely on two cases in which a court held that the plaintiff was the prevailing party when it proved its breach of contract claim but failed to prove an associated fraud claim. Dkt. No. 297 at 9–10. In the first case, *Greenstar, LLC v. Heller*, the court found that the plaintiff prevailed on its breach of contract claim, but not its fraud claim, and it awarded approximately $400,000 in damages to the plaintiff. 934 F. Supp. 2d 672, 695–97 (D. Del. 2013). The court found the plaintiff to be the prevailing party, even though the ultimate recovery was much lower than the recovery originally sought by the plaintiff. *See id.* at 697.

In the second case, *AFH Holding & Advisory, LLC v. Emmaus Life Sciences, Inc.*, the court similarly held that a party was the prevailing party when that party succeeded in proving its breach

---

[1] To the extent that the defendants rely on the fact that the damages awarded to the plaintiffs were far less than the plaintiffs requested, that fact does not dictate which party is the prevailing party in a particular case. For example, in *Comrie v. Enterasys Networks, Inc.*, No. 19254, 2004 WL 936505, at *2 (Del. Ch. Apr. 27, 2004), the Delaware Court of Chancery ruled that the defendants were not the prevailing parties in a case in which the plaintiffs were awarded damages of only about 28% of the amount they had sought; the court concluded that the primary issue was liability, not remedy. More generally, Delaware courts have stated that "whether a party prevailed is determined by reference to substantive issues, not damages." *W. Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC*, No. 2742, 2009 WL 458779, at *9 (Del. Ch. Feb. 23, 2009); *Ivize of Milwaukee, LLC v. Complex Litigation Support, LLC*, Nos. 3158 & 3406, 2009 WL 1111179, at *14 (Del. Ch. Jan. 20, 2009) (same).

[2] For the reasons given by the plaintiffs, the defendants' reliance on *Preferred Inv. Servs., Inc. v. T&H Bail Bonds, Inc.*, No. 5886, 2013 WL 3934992 (Del. Ch. July 24, 2013), is misplaced. The attorneys' fee award in that case was based on the court's conclusion that the plaintiff conducted the litigation in bad faith, an entirely different basis for an attorneys' fee award, and one that is inapplicable here. *Id.* at *26–27.

6

of contract claims but not its fraud claim. No. CV 8005, 2014 WL 1760935, at *2–3 (Del. Super. Ct. Apr. 16, 2014). Applying the traditional all-or-nothing approach, the court noted that the breach of contract claims were the "substantive crux of [the] litigation," and therefore concluded that the fraud claim did not impact that party's status as the prevailing party. *Id.* at *3.

Those cases, however, differ from this case because the plaintiffs in this case did not prevail on the entirety of their breach of contract claim. Although much of the substance of this litigation related to the breach of contract claim, a large portion of that claim involved the plaintiffs' contention that the defendants had overstated the amount of NIS's inventory on the company's August and September 2018 financial statements. At trial, the plaintiffs presented expert and lay testimony regarding NIS's inventory calculation methods, and substantial post-trial briefing was directed to that issue as well. *See, e.g.*, Dkt. Nos. 272, 273, 276, 277, 279, 280. Ultimately, I found that the plaintiffs had failed to prove that the inventory was overstated; I therefore held that they were not entitled to recover on that portion of their breach of contract claim.

Based on the Delaware authorities cited above, I conclude that because each side prevailed on at least one of the chief issues in the case, neither party can be regarded as the "prevailing party" in the case as that term is used in the EPA. Because there was no prevailing party in the litigation, I conclude that each party should bear its own attorneys' fees.

### B. Costs

Under Federal Rule of Civil Procedure 54(d)(1), costs other than attorneys' fees "should be allowed to the prevailing party" unless otherwise provided by statute, rule, or court order.

The plaintiffs argue that the definition of "prevailing party" for purposes of Rule 54(d)(1) is broader than the definition of the term "prevailing party" for purposes of the fee-shifting provision of the EPA. The plaintiffs cite two cases for the proposition that a party prevails for

7

purposes of Rule 54 "if judgment has been entered in favor of that party." Dkt. No. 297 at 16–17. In *Slane v. Mariah Boats, Inc.*, the Seventh Circuit held that a district court did not abuse its discretion when it held that a party prevailed even though it did not "win on every claim." 164 F.3d 1065, 1068 (7th Cir. 1999). And in *Dattner v. Conagra Foods, Inc.*, the Second Circuit held that a prevailing party is one who "achieve[s] a judicially sanctioned change in the legal relationship among the parties." 458 F.3d 98, 102 (2d Cir. 2006) (citation omitted).

While the plaintiffs have achieved a judicially sanctioned change in their legal relationship with the defendants, district courts nevertheless retain the discretion to award no costs under Rule 54(d)(1) even in that situation. *See Delta Air Lines, Inc. v. August*, 450 U.S. 346, 353 (1981); Fed. R. Civ. P. 54(d)(1) (providing an exception to the general approach when "a court order provides otherwise"). As I noted in my findings of fact and conclusions of law, the plaintiffs failed to prove their entitlement to rescissory damages based on the theory that "the loss of their entire investment of NIS was attributable to fraud and wholesale contract breaches by the defendants." Dkt. No. 281 at 52. In light of that finding, I find that it would not be equitable to award the plaintiffs costs under Rule 54(b).

For their part, the defendants argue that they are entitled to their costs incurred after September 1, 2021, because they made an offer of judgment to the plaintiffs that was more favorable than the judgment the plaintiffs actually obtained. Under Federal Rule of Civil Procedure 68, "a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued," at least 14 days prior to trial. Fed. R. Civ. P. 68(a). If that offer is not accepted, and the offeree obtains a judgment that "is not more favorable than the unaccepted offer," then "the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d).

In this case, the plaintiffs do not dispute that the defendants made a Rule 68 offer of judgment in the amount of $550,000 on September 1, 2021. *See* Dkt. No. 297 at 18–20. They argue, however, that the judgment they obtained was more favorable than the offer of judgment because of the fees and costs they incurred prior to September 1, 2021. Specifically, the plaintiffs represent that they incurred $966,283.50 in attorneys' fees and $66,960.58 in costs prior to that date. *Id.* at 19. For purposes of determining whether the Rule 68 offer was more favorable than the judgment actually obtained, the court should consider the damages award along with the "pre-offer fees and costs actually awarded by the court." *See Bogan v. City of Bos.*, 489 F.3d 417, 431 (1st Cir. 2007). Because I have not awarded attorneys' fees to either side, the pre-offer attorneys' fees incurred by the plaintiffs will not factor into the comparison. And even assuming that the plaintiffs would have been entitled to their pre-offer costs, that amount, when added to the damages award and the amount of prejudgment interest awarded by the court totals only $362,866.50, which is less than the $550,000 offered by the defendants on September 1, 2021. Accordingly, Rule 68(d) applies to the defendants' offer for judgment in this case.

Unlike the decision to award costs under Rule 54(d)(1), the imposition of post-offer costs under Rule 68(d) is mandatory and not subject to the discretion of the district court. *Jackson v. Greyhound Lines, Inc.*, No. 15-cv-4461, 2016 WL 3538598, at *1 (E.D. Pa. June 29, 2016) (collecting cases); *see also* 12 Charles Alan Wright et al., Federal Practice & Procedure § 3006 (3d ed., April 2022 update). When Rule 68(d) applies, the plaintiff must bear not only its own costs, but the defendants' costs as well beginning from the date on which the Rule 68 offer of judgment is made. *Tunison v. Cont'l Airlines Corp.*, 162 F.3d 1187, 1193 (D.C. Cir. 1998); *Crossman v. Marcoccio*, 806 F.2d 329, 333 (1st Cir. 1986); *Haworth v. State of Nev.*, 56 F.3d 1048, 1052 (9th Cir. 1995).

9

Accordingly, the defendants will be awarded their costs incurred after September 1, 2021. That award is limited to the costs set forth in 28 U.S.C. § 1920, which the defendants represent amount to $19,275.19 in this case.[3] The plaintiffs do not dispute the defendants' calculation of those incurred costs, Dkt. No. 298 at 14–15, so the defendants will be awarded post-offer costs in that amount.

### III. Conclusion

In summary, neither the plaintiffs nor the defendants are entitled to attorneys' fees because there was no prevailing party in this litigation for purposes of the attorneys' fees provision of the EPA. As for costs, I will exercise my discretion not to award costs under Rule 54(d)(1). However, the defendants are entitled to an award of those costs incurred after their offer for judgment under Rule 68(d). The plaintiffs' motion is therefore DENIED and the defendants' motion is GRANTED IN PART AND DENIED IN PART. An amended judgment will be filed contemporaneously with this order.

IT IS SO ORDERED.

SIGNED this 17th day of October, 2022.

*William C. Bryson*
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE

---

[3] In their brief, the defendants state that they incurred $19,177.11 in post-offer costs taxable under 28 U.S.C. § 1920. Dkt. No. 293 at 16. However, the declarations of Amy Conners and Samuel Hirzel indicate that a total of $19,275.19 in post-offer costs were incurred by the defendants. *See* Dkt. No. 294 at ¶ 14; Dkt. No. 295 at ¶ 13. I will accept the higher amount, the total from the declarations, because the plaintiffs have also accepted that amount in their briefing. *See* Dkt. No. 298 at 14–15.